2012 ME 36

**FOREST ECOLOGY NETWORK et al.**

**v.**

**LAND USE REGULATION COMMISSION et al.**

Supreme Judicial Court of Maine.

Argued: Jan. 10, 2012.

Decided: March 15, 2012.

William J. Schneider, Attorney General, and Gerald D. Reid, Asst. Atty. Gen. (orally), Office of Attorney General, Augusta, for appellant Land Use Regulation Commission.

Scott D. Anderson, Esq. (orally), and Jeffrey T. Selser, Esq., Verrill Dana, LLP, Portland, for appellants Plum Creek Maine Timberlands, LLC, and Plum Creek Land Company.

Richard A. Spencer, Esq., and David M. Kallin, Esq., Drummond Woodsum, Portland, for appellant Forest Society of Maine.

Philip F.W. Ahrens, Esq., and Nicholas D. Livesay, Esq., Pierce Atwood LLP, Portland, for appellant The Nature Conservancy.

Philip Worden, Esq. (orally), Worden Law Office, Northeast Harbor, and Lynne Williams, Esq., Bar Harbor, for cross-appellants Forest Ecology Network and RESTORE: The North Woods.

Russell B. Pierce, Jr., Esq. (orally), David A. Goldman, Esq., and Darya I. Haag, Esq., Norman, Hanson & DeTroy, LLC, Portland, for cross-appellant Natural Resources Council of Maine.

Panel: SAUFLEY, C.J., and LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

LEVY, J.

[¶ 1] The Land Use Regulation Commission (LURC), and Plum Creek Maine Timberlands, LLC, and Plum Creek Land Company (collectively, Plum Creek) appeal from a judgment entered in the Business and Consumer Docket (*Humphrey, C.J.*) vacating LURC's approval of a rezoning petition and concept plan submitted by Plum Creek for land it owns in the Moosehead Lake region. LURC and Plum Creek contend that the court erred by concluding that LURC violated its procedural rules by failing to hold an additional evidentiary hearing on amendments to Plum Creek's petition. Forest Ecology Network and RESTORE: The North Woods (collectively, Forest Ecology Network) and the Natural Resources Council of Maine (NRCM) cross-appeal, arguing primarily that LURC erred in approving the petition because several aspects of the concept plan conflict with statutory requirements. Forest Ecology Network and NRCM also contend that the appeal should be dismissed because it is not taken from a final judgment. The Nature Conservancy and Forest Society of Maine intervened before the Business and Consumer Docket in support of LURC and Plum Creek, and remain parties on appeal.

[¶ 2] We conclude that LURC did not violate its procedural rules and did not otherwise err by approving the rezoning petition and concept plan. Therefore, we vacate the judgment and remand for the entry of a judgment affirming LURC's decision.

## I. BACKGROUND

### A. Administrative Process

[¶ 3] This matter concerns LURC's consideration and eventual approval of a zoning petition originally submitted by Plum Creek in April 2005. The petition proposed the implementation of a thirty-year lake concept plan, developed by Plum Creek, that would redistrict approximately 400,000 acres of Plum Creek's land in the Moosehead Lake region to a Resource Plan Protection Subdistrict. Lake concept plans are created by landowners and serve to clarify long-range landowner intent for both development and conservation of a large portion of shoreland on a lake or group of lakes. Me. Land Use Regulation Comm'n, Dep't of Conservation, Comprehensive Land Use Plan app. C, at C–7 (Mar. 27, 1997) [hereinafter Comprehen-

sive Land Use Plan].[1] The plans address, generally, where development is to be focused and how significant natural and recreational resources will be protected. *Id.* LURC's adoption of a Resource Plan Protection Subdistrict is the mechanism that enables implementation of a concept plan. *Id.* at C–8.

[¶ 4] The property in question is located in twenty-six different minor civil divisions in Somerset and Piscataquis Counties. It encompasses an area that surrounds almost all of Moosehead Lake. As LURC noted in its decision, Plum Creek's proposal is "unprecedented in its scale and complexity, and in the level of interest in and attention to the proposal by members of the public, organized interest groups, and governmental review agencies."

[¶ 5] LURC is a seven-member citizen commission whose members are appointed by the Governor. 12 M.R.S. § 683 (2011). LURC acts as the planning and zoning board for the unorganized and deorganized areas of the State, which encompass more than ten million acres. 12 M.R.S. §§ 681, 683 (2011); Comprehensive Land Use Plan at 1. As a planning and zoning body, LURC has the authority to adopt and amend land use district boundaries and standards, and issue development permits. 12 M.R.S. §§ 685–A, 685–B (2011).

LURC reviews the amendment or adoption of use district boundaries pursuant to criteria established in 12 M.R.S. § 685–A(8–A).[2] LURC is supported by a professional staff of land use planners and others who are employees of the Maine Department of Conservation. Comprehensive Land Use Plan at 3–4.

[¶ 6] The concept plan proposed in Plum Creek's petition included conservation, recreation, forest management, and residential and commercial development elements. Throughout the resulting four-year administrative process, which involved hundreds of witnesses and exhibits, public debate was dominated by the tension between the region's two perceived needs—conservation and development. In response to public and agency feedback, Plum Creek amended its petition and associated concept plan three times: in April 2006, April 2007, and October 2007. The first two amendments superseded and replaced the petition that preceded them, and the October 2007 amendment supplemented and amended the April 2007 petition.

[¶ 7] In December 2007 and January 2008, LURC held four weeks of what it described in its subsequent written decision as "adjudicatory hearings," in which each of the twenty-one parties who had

1. Although the Comprehensive Land Use Plan has since been revised, *see* Me. Land Use Regulation Comm'n, Dep't of Conservation, Comprehensive Land Use Plan iii, v (Mar. 16, 2010), because the 1997 Comprehensive Land Use Plan was the plan in use during the pendency of the proceeding before LURC, our review of this case will be guided by, and all references and citations will refer to, the 1997 Plan.

2. Title 12 M.R.S. § 685–A(8–A) (2011) provides:

**Criteria for adoption or amendment of land use district boundaries.** A land use district

boundary may not be adopted or amended unless there is substantial evidence that:
**A.** The proposed land use district is consistent with the standards for district boundaries in effect at the time, the comprehensive land use plan and the purpose, intent and provisions of this chapter; and
**B.** The proposed land use district satisfies a demonstrated need in the community or area and has no undue adverse impact on existing uses or resources or a new district designation is more appropriate for the protection and management of existing uses and resources within the affected area.

submitted pre-filed testimony and a number of state agencies participated. At these evidentiary hearings, the parties presented opening statements and cross-examined, redirected, and re-crossed nearly 200 witnesses based on the witnesses' pre-filed written testimony. In addition, LURC held four days of public hearings at which more than 450 individuals testified under oath.

[¶ 8] The hearings concluded on January 25, 2008. Before the close of the final hearing day, counsel for LURC proposed to the commissioners three procedural options for the post-hearing process: (1) proceed directly to an "up or down" vote on the petition, (2) allow Plum Creek to amend the petition further by revising the concept plan, or (3) direct LURC staff and its consultants to develop and propose amendments to the concept plan to meet the regulatory requirements. All of the commissioners present expressed a preference for the third option. LURC then invited the parties to comment in writing on the proposed post-hearing process by January 30, 2008. A number of parties, including both Forest Ecology Network and NRCM, filed comments in response to this request.

[¶ 9] Over the course of the next eighteen months, the record remained open and the parties were invited to submit comments at nearly every stage of the post-hearing process. In particular, the parties submitted post-hearing briefs and reply briefs, comments on a draft list of

core issues for LURC to address during deliberations, comments on documents that were produced after these deliberations and that described whether and how LURC would amend each core element of the concept plan to satisfy statutorily-mandated criteria, proposed implementing language for the LURC-generated amendments, and comments on the draft concept plan amendments proposed by LURC's staff. Members of the public were also invited to comment on the draft concept plan amendments, and many did. Plum Creek agreed in writing to accept the plan amendments proposed by LURC. LURC finally closed the administrative record on August 11, 2009.

[¶ 10] On September 23, 2009, LURC issued a 186–page written decision setting forth its findings of fact and conclusions of law, and approving Plum Creek's petition as amended, thereby rezoning 380,074 acres to a Resource Plan Protection Subdistrict. Forest Ecology Network and NRCM filed separate M.R. Civ. P. 80C appeals in the Superior Court seeking judicial review of LURC's decision.

B.  Maine Rule of Civil Procedure 80C Appeal

[¶ 11] The Rule 80C appeals were consolidated and transferred to the Business and Consumer Docket. Forest Ecology Network filed, and NRCM joined in, a motion pursuant to Rule 80C(e) for the taking of additional evidence.[3] The motion

---

**3.**  M.R. Civ. P. 80C(e) provides:

Additional Evidence. A party who intends to request that the reviewing court take additional evidence or order the taking of additional evidence before an agency as provided by 5 M.R.S.A. § 11006(1) shall file a motion to that effect within 10 days after the record of the proceedings is filed under subdivision (f), but not before the record of proceedings is filed. The failure of a party

to file such a motion shall constitute a waiver of any right to the taking of additional evidence. Upon the filing of a motion for the taking of additional evidence, the time limits contained in this rule shall cease to run pending the issuance of an appropriate order of court specifying the future course of proceedings with that motion. The moving party shall also file with the motion a detailed statement, in the nature of an offer

sought to develop evidence as to whether Plum Creek had paid all or a portion of the expert witness expenses of the other intervening parties. Plum Creek, LURC, Forest Society of Maine, and The Nature Conservancy opposed the motion, and in May 2010, the court denied the motion.

[¶ 12] After briefing and arguments, the court issued a comprehensive decision, dated April 7, 2011, that rejected all of Forest Ecology Network and NRCM's claims of error, save one related to the process that LURC followed after the completion of the evidentiary hearing in January 2008. The court determined that although LURC had the authority to propose the amendment of Plum Creek's petition following Plum Creek's submission of its third amended petition, LURC could not do so without conducting an evidentiary hearing on what the court characterized as the "fourth amended petition." The court concluded: "Because LURC disregarded its Chapter 5 rules and engaged in an unauthorized, ad hoc procedure that prejudiced Petitioners' rights, the court must vacate the Decision of the Commission and remand for a public hearing on Plum Creek's fourth and final amended petition."

C. Law Court Appeal

[¶ 13] Plum Creek, LURC, The Nature Conservancy, and Forest Society of Maine timely appealed the Rule 80C decision, and Forest Ecology Network and NRCM cross-appealed. Forest Ecology Network and NRCM then filed a joint motion to dismiss the appeal, arguing that because the court's judgment remanded the case to LURC for a further hearing, the judgment does not constitute a final judgment from which an appeal to the Law Court may be taken. The Nature Conservancy, Plum Creek, and LURC each filed motions in opposition to the motion to dismiss. We ordered that the motions be considered with the merits of the appeal.

## II. LEGAL ANALYSIS

A. Procedural Issues

[¶ 14] We begin by addressing two threshold procedural issues: (1) whether this appeal should be dismissed as interlocutory, and (2) whether Forest Ecology Network and NRCM failed to preserve their argument that LURC was required to hold an additional evidentiary hearing. We answer both questions in the negative.

1. Interlocutory Appeal

[¶ 15] NRCM and Forest Ecology Network assert that because the court's judgment remanded this matter to LURC for further proceedings, it is not a final judgment and the appeal should be dismissed. LURC, Plum Creek, Forest Society of Maine, and The Nature Conservancy concede that the judgment is not a final judgment, but contend that the appeal should be heard because an exception to the final judgment rule applies.

[¶ 16] As a general proposition, in Rule 80C appeals, a Superior Court judgment that remands the case to an executive agency or municipal government for additional decision-making is not final, and we will not entertain interlocutory appeals taken from such judgments. *See Aubry v. Town of Mount Desert*, 2010 ME 111, ¶ 6, 10 A.3d 662. The requirement of

of proof, of the evidence intended to be taken, except as provided below. That statement shall be sufficient to permit the court to make a proper determination as to whether the taking of additional evidence as presented in the motion and offer of proof is appropriate under this rule and if so to what extent. After hearing, the court shall issue an appropriate order specifying the future course of proceedings.

a final judgment for appellate review, although not jurisdictional, is a long-standing prudential rule. *Harding v. Comm'r of Marine Res.*, 510 A.2d 533, 536 (Me. 1986). It is intended to avoid piecemeal appeals and to promote the efficient and effective resolution of legal disputes. *Millett v. Atl. Richfield Co.*, 2000 ME 178, ¶ 8, 760 A.2d 250.

■ [¶ 17] Plum Creek, LURC, Forest Society of Maine, and The Nature Conservancy contend that we should entertain their appeal under what is known as the judicial economy exception. This exception to the final judgment rule has two requirements: first, that our "review of a non-final order can establish a final, or practically final, disposition of the entire litigation," and second, that "the interests of justice require that immediate review be undertaken." *Town of Otis v. Derr*, 2001 ME 151, ¶ 3, 782 A.2d 788 (quotation marks omitted).

[¶ 18] We generally construe the exception's first requirement narrowly. *See U.S. Dep't of Agric., Rural Hous. Serv. v. Carter*, 2002 ME 103, ¶ 13, 799 A.2d 1232. "If the availability of the judicial economy exception depended on our deciding the case in a certain way, then the judicial economy exception would eviscerate the final judgment rule because we would have to decide the merits in order to determine if the appeal was properly before us." *Id.* However, we have, in a handful of instances, relaxed this first requirement when it is apparent that the denial of appellate review could result in "judicial interference with apparently legitimate executive department activity" and therefore appellate review is necessary to "safe-guard the separation of powers." *Bar Harbor Banking & Trust Co. v. Alexander*, 411 A.2d 74, 77 (Me.1980); *see also York Cnty. Bd. of Realtors v. York Cnty. Comm'rs*, 634 A.2d 958, 959–60 (Me.1993) (applying the excep-

tion to "entertain [an] appeal from an interlocutory order to ensure that interference with the functioning of another branch of government is given prompt review"); *State v. St. Regis Paper Co.*, 432 A.2d 383, 385–86 (Me.1981) (discussing and then applying the exception recognized in *Bar Harbor Banking & Trust* ). This special separation of powers exception is itself narrowly construed and only applies when justified by "extraordinary circumstances." *Almy v. U.S. Suzuki Motor Corp.*, 600 A.2d 400, 402 (Me.1991). That is, it applies when prompt appellate review is required "to prevent judicial interference with apparently legitimate executive department activity and thereby safeguard the separation of powers, and in order to avoid undue [judicial] disruption of administrative process." *Id.* (quotation marks and citations omitted). In such circumstances, we have sometimes referred to the exception as a pragmatic exception to the final judgment rule. *See Fichter v. Bd. of Envtl. Prot.*, 604 A.2d 433, 436 (Me.1992).

[¶ 19] In *Fichter v. Board of Environmental Protection,* property owners appealed the Department of Environmental Protection's denial of their permit application to the Board of Environmental Protection (BEP). *Id.* at 434–35. Before the BEP, the Department and the Fichters were permitted to present evidence, but neither was permitted to cross-examine the other's witnesses. *Id.* at 435. The BEP affirmed the denial of the Fichters' permit, both initially and after reconsideration, and the Fichters appealed to the Superior Court pursuant to M.R. Civ. P. 80C. *Id.* The Fichters' case was remanded by the Superior Court to the BEP for a full adjudicatory hearing with cross-examination and rebuttal. *Id.* The BEP appealed from the Superior Court's decision be-

fore complying with that court's remand order. *See id.* at 435–36.

[¶ 20] We determined that the merits of the BEP's appeal should be decided even though the judgment was interlocutory. *Id.* at 436. The judgment had "the potential of interfering severely with the administrative procedures of that agency." *Id.* If appellate review were denied, it was possible that the legal question of whether the administrative agency was required under the circumstances to conduct a full adjudicatory hearing with rights of cross-examination and rebuttal would have escaped our appellate review:

> [I]t is unlikely that the BEP can ever obtain appellate review of the Superior Court's procedural ruling if we do not entertain its appeal now. If after the hearing with full cross-examination and rebuttal the BEP grants the Fichters a sand dune permit, the BEP is not an aggrieved party entitled to appeal its own order. On the other hand, if after the full hearing the BEP again denies the Fichters' application, any challenge to the Superior Court's ruling that the BEP might try to raise at that time on a cross-appeal would appear to be moot because the BEP would already have held the full hearing ordered by the court and there would be no meaningful relief the BEP could then be given.

*Id.* In addition, we noted that the "expense and delay involved in providing a permit applicant a full-blown adversarial hearing with cross-examination and rebuttal are substantial." *Id.* We concluded that under these circumstances it was "inappropriate to apply our court-made final judgment rule." *Id.*

[¶ 21] The circumstances of the present case are similar to those in *Fichter*: an administrative agency is appealing a court order remanding the case to the agency for an additional evidentiary hear-

ing when there is a genuine question as to whether the hearing is required by law. The same prudential concerns noted in *Fichter* are also present. First, unlike a remand order to a municipal board that does not implicate the separation of powers, or a remand order to a state agency that does not substantially interfere with the agency's discretion concerning the administration of the law it is charged with executing (such as by requiring it to issue additional findings or to reconsider an administrative record that has already been developed), the remand order in this case directly intervenes in and reshapes LURC's administration of 12 M.R.S. § 685-A. If we do not consider this appeal, it is reasonably possible that LURC will not be able to obtain appellate review of the court's decision that a further evidentiary hearing is required. As would have been true with the BEP in *Fichter*, if LURC holds an additional hearing following the remand and no appeal from its decision is taken by any of the parties, LURC would be unable to appeal its own decision and thus would be prevented from obtaining appellate review of the court's legal ruling that resulted in the remand order.

[¶ 22] Second, if we dismiss the appeal and LURC is required to begin anew and hold an evidentiary hearing, the time and expense of the resulting process will be substantial—indeed, exponentially greater than the time and expense associated with the permit at issue in *Fichter*. The parties do not dispute LURC's characterization of Plum Creek's concept plan proposal as being "unprecedented in its scale and complexity." If a new evidentiary hearing is held, the case is again appealed, and we ultimately determine that a new evidentiary hearing should not have been required, the wasted judicial and agency resources would be of an order of magnitude far in

excess of that which was possible in *Fichter*.[4]

[¶ 23] Accordingly, the required elements of the judicial economy exception are present. The exception's first element is satisfied because our review of the judgment has the potential to establish a final disposition of the entire litigation—namely, the final approval of Plum Creek's concept plan. In addition, although the litigation is not resolved if we too conclude that LURC must hold another public hearing, the denial of appellate review could result in unnecessary judicial interference with an extensive rulemaking process by an Executive Branch agency, thus burdening the separation of powers. As to the second element, the unprecedented and far-reaching effects of LURC's approval of Plum Creek's petition, and the potential waste of extensive agency resources, compel the conclusion that immediate appellate review is necessary in the interests of justice. *See Derr*, 2001 ME 151, ¶ 3, 782 A.2d 788. Although it is the rare case in which the judicial economy exception should be deemed to justify appellate review of an interlocutory order, this is such a rare case.

2. Issue Preservation

[¶ 24] "Generally, plaintiffs in a Rule 80C proceeding for review of final agency action are expected to raise any objections they have before the agency in order to preserve these issues for appeal." *New England Whitewater Ctr., Inc. v. Dep't of Inland Fisheries & Wildlife*, 550 A.2d 56, 58 (Me.1988). "Issues not raised at the administrative level are deemed unpreserved for appellate review." *Id.* Plum Creek contends that Forest Ecology Network and NRCM failed to preserve their argument that LURC should have reopened the hearing because they did not request that LURC reopen the hearing at any point during the agency's review proceeding.[5]

[¶ 25] Neither NRCM nor Forest Ecology Network asserts that they explicitly requested that LURC reopen the hearing. In its January 30, 2008 comment regarding the post-hearing process, NRCM advocated for a vote on Plum Creek's petition as it stood at the conclusion of the hearing and "reserve[d] the right to request that the hearings be reopened." Forest Ecology Network similarly supported an immediate vote on the petition in its January 30, 2008 comment on the post-hearing process but did not directly request that LURC reopen the hearing.

[¶ 26] However, in July 2008, both Forest Ecology Network and NRCM submitted detailed comments on the LURC-generated amendments. Forest Ecology Network asserted that the amended concept plan still failed to meet the regulatory criteria but also raised, as one of four major points, its concern that "[a]llowing Plum Creek to adopt the proposed amendments would undermine the integrity of the process because none of the evidentia-

---

4. It appears that the judicial economy exception grew out of pragmatic concerns regarding wasted resources. As one commentator has noted:

> If one of Congress' goals in enacting the final judgment rule was to achieve judicial economy and avoid undue waste and harassment, intelligent use of the pragmatic balancing approach will accomplish these very same ends. For if the approach is used to avoid the unnecessary expenditure of time, effort and money at the trial level, the result will be increased judicial economy.

Martin H. Redish, *The Pragmatic Approach to Appealability in the Federal Courts*, 75 Colum. L.Rev. 89, 126 (1975).

5. LURC, Forest Society of Maine, and The Nature Conservancy do not join this argument.

ry hearings tested the proposed amendments." NRCM also suggested that a number of issues related to the LURC-generated amendments were not adequately addressed because they were not considered at a hearing. These comments were sufficient to alert LURC to the argument that an additional evidentiary hearing should have been held before LURC made its final decision, and to preserve that question for our review.

## B. Review of Agency Decision

[¶ 27] Because we conclude that the appeal satisfies the requirements of the judicial economy exception to the final judgment rule and that the appellees preserved the issue for judicial review, we now turn to the merits of the appeal.

[¶ 28] In an appeal from a judgment issued pursuant to M.R. Civ. P. 80C, we review the administrative agency's decision directly for "legal errors, abuse of discretion, or unsupported factual findings." *Nelson v. Bayroot, LLC*, 2008 ME 91, ¶ 17, 953 A.2d 378. "In reviewing an agency's interpretation of its own rules, regulations, or procedures, we give considerable deference to the agency and will not set aside the agency's interpretation unless the regulation or rule compels a contrary interpretation." *Id.* The party attempting to vacate the agency's decision bears the burden of persuasion. *Town of Jay v. Androscoggin Energy, LLC*, 2003 ME 64, ¶ 10, 822 A.2d 1114. If the agency's decision was committed to the reasonable discretion of the agency, the party appealing has the burden of demonstrating that the agency abused its discretion in reaching the decision. *See Sager v. Town of Bowdoinham*, 2004 ME 40, ¶ 11, 845 A.2d 567. "An abuse of discretion may be found where an appellant demonstrates that the decisionmaker exceeded the bounds of the reasonable choices available to it, consider-

ing the facts and circumstances of the particular case and the governing law." *Id.*

[¶ 29] We proceed in our analysis by addressing (1) whether LURC erred by failing to hold an evidentiary hearing on the final amended petition, and (2) whether the court otherwise erred in rejecting the remaining claims of error raised by Forest Ecology Network and NRCM in their cross-appeal. Again, we answer both questions in the negative.

### 1. LURC's Failure to Hold an Evidentiary Hearing on Plum Creek's Final Amended Concept Plan

[¶ 30] LURC, Plum Creek, Forest Society of Maine, and The Nature Conservancy contend that the court erred by concluding that LURC engaged in an unauthorized procedure that prejudiced Forest Ecology Network and NRCM's rights when LURC failed to reopen the evidentiary hearing after the concept plan was finally amended. We consider this question by (a) exploring the statutory framework for LURC's zoning authority, then (b) turning to the specific requirements of LURC's rules, and finally (c) applying the applicable statutes and rules to the circumstances of this case.

#### a. Statutory Framework

[¶ 31] Plum Creek's petition proposing a thirty-year concept plan sought to change the subdistrict boundaries in the plan area from Management, Development, and Protection subdistrict designations to a Resource Plan Protection Subdistrict. *See* 12 M.R.S. § 685–A(1); 4 C.M.R. 04–061 010–25 to –92 §§ 10.21–.23 (2011). The concept plan was reviewed by LURC pursuant to the statutory criteria set forth in 12 M.R.S. § 685–A(8–A). Section 685–A addresses land use districts and standards and grants LURC the authority to "determine the boundaries of areas

within the unorganized and deorganized areas of the State that fall into land use districts." 12 M.R.S. § 685–A(1). Subsection 7–A "governs procedures for the establishment and amendment of land use district standards and boundaries and the amendment of the commission's land use maps." 12 M.R.S. § 685–A(7–A). The adoption and amendment of land use district standards, district boundaries, and maps are rulemaking procedures subject to the requirements of the rulemaking subchapter of the Maine Administrative Procedure Act.[6] 12 M.R.S. § 685–A(7–A)(B); *see* 5 M.R.S. §§ 8051–8064 (2011).

[¶ 32] Although subsection 7–A does not address the specific question presented here—whether LURC must hold an additional hearing if it chooses to consider amendments to a concept plan for which it has previously completed a hearing—subsection 7–A(B)(3) does offer guidance. It provides:

> At any time prior to the date of adoption of proposed land use district standards, land use boundaries or land use maps, the commission *may* elect to reopen the public hearing record and extend the time period for public comment to such date as it may designate.

12 M.R.S. § 685–A(7–A)(B)(3) (emphasis added). Thus, the Legislature recognized that there would be instances when LURC would need to reopen the record following the completion of a public hearing to receive additional input from the public, but the Legislature did not direct that a new public hearing *must* be convened in order to accomplish this objective.

---

**6.** There are certain exceptions not relevant here. *See* 12 M.R.S. § 685–A(7–A)(B) (2011).

**7.** In this case, neither Forest Ecology Network nor NRCM has argued that five or more interested people requested that LURC hold a

[¶ 33] The Maine Administrative Procedure Act addresses notice and public hearings in rulemaking procedures in section 8052, which provides in relevant part:

> **Notice; public hearing.** Prior to the adoption of any rule, the agency shall give notice as provided in section 8053 and *may* hold a public hearing, except that a public hearing must be held if otherwise required by statute or requested by any 5 interested persons or if the rule is a major substantive rule as defined in section 8071, subsection 2, paragraph B.

5 M.R.S. § 8052(1) (emphasis added). Because a statute's words are given "their plain, common and ordinary meaning unless the statute reveals a contrary legislative intent," *Androscoggin Energy, LLC,* 2003 ME 64, ¶ 10, 822 A.2d 1114 (quotation marks omitted), the use of the word "may" gives the agency discretion during rulemaking regarding whether to hold a public hearing, unless the exceptions apply.[7] *See* 1 M.R.S. § 71(9–A) (2011).

### b. LURC's Rules of Procedure

[¶ 34] LURC's internal rules of procedure also indicate that the decision whether to hold a public hearing in connection with a rulemaking proceeding addressing the amendment or adoption of district boundaries is discretionary. Chapter 4 of LURC's rules addresses rules of practice. 4 C.M.R. 04–061 004–1 § 4.01 (2011). Section 4.05 addresses petitions for adoption or amendment of land use district boundaries. 4 C.M.R. 04–061 004–6 to –8 § 4.05. Subsection 5 of that section provides:

> When to Hold a Public Hearing: The Commission shall consider all requests

---

public hearing on the amendments added after the evidentiary hearing closed, or that the rule is a major substantive rule. Thus, LURC's decision to hold a hearing was discretionary.

submitted in a timely manner for a hearing on a petition for a change in district boundaries. *Holding the hearing is at the discretion of the Commission* unless otherwise required by the Constitution of Maine or statute or if five or more interested persons request in writing that the Commission hold a hearing, in which case a hearing must be held. In determining whether a hearing is advisable, the Commission shall consider the degree of public interest and the likelihood that information presented at the hearing will be of assistance to the Commission reaching its decision.

4 C.M.R. 04–061 004–7 § 4.05(5) (emphasis added).

[¶ 35] In addition, Chapter 5, which establishes LURC's rules for the conduct of public hearings, also grants the presiding officer the following authority:

To the extent permitted by law, where good cause appears, the Presiding Officer *may permit deviation from the procedural rules* of the Commission insofar as compliance therewith is found to be impractical or unnecessary and the change does not prejudice any of the parties.

4 C.M.R. 04–061 005–1 to –2 § 5.06(2)(f) (2011) (emphasis added). Section 5.18, which addresses closure of the hearing, indicates:

Reopening a hearing prior to a decision: Prior to issuance of a final order or decision, the Commission *may elect to reopen a hearing* and extend the time period for public comment in compliance with Chapter 4 of these rules.

4 C.M.R. 04–061 005–5 § 5.18(3) (emphasis added).

### c. Analysis of the Applicable Statutes and Rules

[¶ 36] LURC's statutory authority and procedural rules clearly establish that when LURC considers proposed amendments to land use district boundaries under the circumstances presented in this case, it has the discretion to decide whether to hold a hearing. The rules are silent on the precise question of whether LURC, having conducted a hearing, is free to entertain amendments to the petition before it without conducting an additional hearing. However, the rules are explicit in establishing that the Commission's presiding officer has considerable discretion in how hearings are conducted, so long as the process employed does not prejudice any of the parties. Moreover, both the statute—12 M.R.S. § 685–A(7–A)(B)(3)—and the rules—section 5.18—recognize that *at any time* prior to adopting a proposed land use boundary, LURC may reopen the hearing record and request additional public comment.

[¶ 37] Accordingly, LURC did not violate its procedural rules when it considered the final amendments to the concept plan without conducting an additional hearing because, first, the post-hearing process it employed assured all parties had ample opportunity to submit information regarding the post-hearing amendments, and, second, no party was prejudiced by the process that was employed.

[¶ 38] LURC's review of the petition and concept plan was exhaustive. The record demonstrates that LURC made every effort to provide notice and receive comment from all interested parties at each critical stage of its review of the petition. At the conclusion of the hearing phase of review, LURC determined, and Plum Creek agreed, that the proposal could be improved and LURC invited the parties to comment on a post-hearing process in which LURC's staff might propose amendments to satisfy the statutory review criteria of section 685–A(8–A). LURC's Eleventh Procedural Order ad-

dressed the post-hearing process, directed LURC staff and consultants to draft proposed amendments, invited the parties to submit post-hearing briefs, and indicated that the record would remain open until further notice. All parties received a copy of the post-hearing schedule. Perhaps most importantly, the parties submitted lengthy and detailed comments on the proposed amendments. Given the already voluminous record, the significant cost in both time and resources required to reopen the hearing, and the fact that LURC gave the parties a fair opportunity to submit comments throughout the post-hearing process, including on the proposed amendments, LURC's decision not to reopen the hearing was reasonable and within the bounds of its discretion. *See Fichter*, 604 A.2d at 438 (finding that additional procedures were not necessary when the parties "had ample opportunity to present evidence").

[¶ 39] In addition, neither Forest Ecology Network nor NRCM has identified any actual prejudice resulting from the process that LURC employed, other than that they were denied the opportunity to cross-examine witnesses regarding the amendments drafted by LURC. A right to cross-examine witnesses in a rulemaking proceeding is not required by LURC's procedural rules, the Maine Administrative Procedure Act, or due process of law. The only part of LURC's rules that addresses cross-examination is chapter 5, which governs the conduct of public hearings and grants parties the right to cross-examine witnesses who have provided direct testimony when a hearing is held. 4 C.M.R. 04–061 005–4 § 5.16(1)(b). However, as we have explained above, LURC is not required to hold a hearing at all when considering petitions to change land use

district boundaries, and the procedures specifically governing review of such petitions make no reference to a right of cross-examination. *See* 4 C.M.R. 04–061 004–6 to –8 § 4.05 (making no reference to cross-examination in procedures governing LURC's consideration of a petition to change land use district boundaries). Additionally, the Maine Administrative Procedure Act addresses cross-examination only in the context of an adjudicatory proceeding, and makes no reference to a right to cross-examine witnesses in the context of a rulemaking proceeding. 5 M.R.S. §§ 9056–9057 (2011); *see* 5 M.R.S. §§ 8051–8064 (Maine Administrative Procedure Act subchapter on rulemaking). Finally, due process does not require that an agency afford an opportunity for cross-examination of every witness in all administrative hearings: "Where the administrative process could be characterized as quasi-legislative, or investigative, due process has been found not to require cross-examination." *In re Me. Clean Fuels, Inc.*, 310 A.2d 736, 747 (Me.1973) (footnotes omitted); *see Fichter*, 604 A.2d at 436–37.

[¶ 40] NRCM also asserts that LURC's decision to accept additional comments and evidence regarding the amendments after the close of the hearing was in error because LURC was required to make decisions based "solely on the record generated during the public hearings." This assertion is unfounded. Although agencies must make decisions based on the administrative record, *Forbes v. Town of Southwest Harbor*, 2001 ME 9, ¶ 14, 763 A.2d 1183, the record consists of much more than simply the testimony and other evidence introduced at a hearing.[8] LURC's rules provide that the hearing record also includes "any other evidence received or considered." 4 C.M.R. 04–061

---

8. The Maine Administrative Procedure Act directs an agency to "consider all relevant information available to it" when engaged in rulemaking. 5 M.R.S. § 8052(4) (2011).

005–5 § 5.19. The rules also authorize the Commission to reopen the hearing record prior to adopting proposed land use boundaries and to extend the time for public comment. 4 C.M.R. 04–061 004–7 § 4.05(10)(c). The rules thus envision varied means by which LURC may gather information as part of a rulemaking process.

[¶ 41] We give "considerable deference" to an agency's interpretation of its own rules, and the agency's interpretation will not be set aside "unless the regulation or rule compels a contrary interpretation." *Nelson*, 2008 ME 91, ¶ 17, 953 A.2d 378. Affording this deference to LURC's application of its chapter 4 and chapter 5 rules in this case, there is no discernable error of law or abuse of discretion in the process that was employed, nor was there any actual prejudice resulting from that process. *See Androscoggin Energy, LLC*, 2003 ME 64, ¶ 9, 822 A.2d 1114. Because LURC did not violate its own rules or exceed the bounds of its discretion by deciding not to conduct a new evidentiary hearing on the final amendments to Plum Creek's concept plan, we vacate the judgment of the court.

2. Claims of Error Raised in Forest Ecology Network's and NRCM's Cross–Appeals

[¶ 42] Forest Ecology Network and NRCM assert, separately or together, that LURC erred by (a) not conducting an "up or down" vote on Plum Creek's petition at the close of the hearing; (b) approving Plum Creek's receipt of compensation in exchange for conveying conservation easements to achieve land conservation requirements; (c) subjecting the concept plan to future amendment only upon the

mutual agreement of LURC and the landowner; (d) treating the concept plan as equivalent to prospective zoning for the Moosehead Lake region; and (e) finding that the concept plan satisfied the "demonstrated need" criterion of 12 M.R.S. § 685–A(8–A)(B). NRCM also contends that the court erred by (f) denying its motion pursuant to M.R. Civ. P. 80C(e) to permit the development of additional evidence regarding the possible bias of certain witnesses.[9]

a. "Up or Down" Vote on Petition

[¶ 43] Neither the governing statute nor LURC's procedural rules explicitly require LURC to immediately vote "up or down" on a petition as submitted at the close of a hearing. Section 4.05 of LURC's rules requires that LURC "must act upon a petition for proposed changes to district boundaries within 90 days after the final closure of the public hearing," if a public hearing is held, but the section also provides that LURC "may elect to reopen the public hearing record and extend the time period for public comment to such date as it may designate." 4 C.M.R. 04–061 004–7 § 4.05(10)(b), (c). This ability to reopen the record and consider additional comments provides LURC with discretion regarding how to proceed at the close of a public hearing, if one is held.

[¶ 44] Furthermore, both the governing statute and LURC's procedural rules indicate that LURC may take an active role in the adoption or amendment of land use district boundaries because both permit LURC to initiate such a process. Title 12 M.R.S. § 685–A(7–A)(A) provides:

The commission or its staff may initiate and any state or federal agency, any county or municipal governing body or any property owner or lessee may peti-

9. NRCM and Forest Ecology Network raise additional arguments that we find unpersuasive and do not address further.

tion for adoption or amendment of land use district standards, district boundaries or land use maps.

LURC's rules provide that the "Commission or its staff may initiate" the adoption or amendment of a land use district boundary. 4 C.M.R. 04–061 004–6 § 4.05(2). LURC's ability to modify a redistricting petition by proposing its own amendments is consistent with LURC's independent authority to initiate such redistricting on its own. Forcing LURC to do no more than accept or reject a petition as drafted and submitted by a private party risks wasting agency resources in situations when LURC finds merit in some aspects of the plan proposed in the petition but not others.

[¶ 45] Finally, a requirement that LURC immediately vote "up or down" on a petition at the end of a hearing would be contrary to general principles of administrative law. The procedure for amending land use district standards, district boundaries, and land use maps is clearly defined by statute as a rulemaking procedure. 12 M.R.S. § 685–A(7–A)(B). Although LURC's written decision repeatedly referred to the hearing as an "adjudicatory hearing," when read in context, this reference mischaracterizes both what actually occurred and the nature of LURC's authority when it engages in rulemaking.[10] Under the Maine Administrative Procedure Act, a rule is a judicially enforceable standard adopted by an agency:

> "Rule" means the whole or any part of every regulation, standard, code, statement of policy, or other agency guideline or statement of general applicability, including the amendment, suspension or repeal of any prior rule, that is or is intended to be judicially enforceable and implements, interprets or makes specific the law administered by the agency, or describes the procedures or practices of the agency.

5 M.R.S. § 8002(9)(A) (2011). In contrast, an adjudicatory proceeding is defined as "any proceeding before an agency in which the legal rights, duties or privileges of specific persons are required by constitutional law or statute to be determined after an opportunity for hearing." 5 M.R.S. § 8002(1). Although the rulemaking process in this case was not initiated by LURC itself, the ensuing process, the standards employed, and the approved plan were all steeped in LURC's statutory authority to engage in rulemaking.[11]

---

**10.** Because of this mischaracterization, the court and the parties were not without reason to think that the process was more an adjudication than a rulemaking. However, even if LURC were attempting to hold an adjudicatory hearing on this petition, this characterization would not control because LURC is bound by its governing statute, which, as we have previously noted, clearly defines the procedure to amend district boundaries or standards as a rulemaking procedure subject to the requirements of the Maine Administrative Procedure Act. *See* 12 M.R.S. § 685–A(7–A)(B); *see also* 5 M.R.S. § 8052 (2011); *Cobb v. Bd. of Counseling Prof'ls Licensure,* 2006 ME 48, ¶ 13, 896 A.2d 271 ("If the statute is unambiguous, we do not defer to the agency's construction, but we interpret the statute according to its plain language.").

**11.** A basic tenet of administrative law is that rulemaking is a quasi-legislative act, and that adjudication is a quasi-judicial act. 3 Jacob A. Stein, Glenn A. Mitchell & Basil J. Mezines, *Administrative Law* § 14.01 (2007). LURC is "charged with land use planning and zoning for all of the unorganized and deorganized areas of the state." *Nattress v. Land Use Regulation Comm'n,* 600 A.2d 391, 393 (Me. 1991). Zoning is a legislative act. *Crispin v. Town of Scarborough,* 1999 ME 112, ¶ 18, 736 A.2d 241. Further, "the adoption of a zoning amendment, like the enactment of the original zoning ordinance[,] is also a legislative act." *Bog Lake Co. v. Town of Northfield,* 2008 ME 37, ¶ 11, 942 A.2d 700 (quotation marks omitted).

[¶ 46] Unlike adjudications, which are quasi-judicial determinations of individual rights, rulemaking is focused on policy matters of general applicability. The outcome of the procedure outlined in 12 M.R.S. § 685–A is LURC's adoption of new land use standards for an area within the unorganized and deorganized areas of the state. This is not a situation in which LURC's decision adjudicates Plum Creek's rights, or the rights of other specified parties, as would occur with the approval or denial of a building permit or other land use authorization. Those processes will come later, when and if Plum Creek or others apply for permits to develop particular parcels within the bounds of the newly rezoned area. *See* 12 M.R.S. § 685–B. In this case, LURC performed a quasi-legislative act that has as its outcome the amendment of zoning boundaries and standards governing the use of land within those boundaries. *See id.* § 685–A(7–A).

[¶ 47] LURC's ability to exercise its planning and zoning functions would be greatly diminished if it were compelled to simply accept or reject a proposed concept plan as originally submitted. Such a constricted view of LURC's authority is contrary to the scheme set forth in section 685–A(7–A) because the statute implicitly recognizes that, regardless of whether a petition to adopt or amend land use district boundaries is initiated by LURC, its staff, another agency, county or municipal government, or a property owner or lessee, the rulemaking process that ensues is the same. *See id.* § 685–A(7–A). As already noted, the statute, like LURC's own rules, specifically provides that LURC can reopen the public hearing record and extend the time for public comment at any time before adopting land use district standards or boundaries. *Id.* § 685–A(7–A)(B)(3). This dynamic process is critical to ensuring an effective rulemaking process. It would be stymied if we were to adopt NRCM and Forest Ecology Network's position that once a property owner submits a proposed concept plan, LURC ultimately may do no more than take an "up or down" vote on the plan as originally proposed.

[¶ 48] Because LURC was acting in its rulemaking capacity, it was both reasonable and within LURC's authority to develop amendments to Plum Creek's original concept plan.

### b. Plum Creek's Payment of Compensation to Achieve Land Conservation

[¶ 49] Plum Creek will receive compensation from third parties for the conservation land included in the Moosehead Legacy Conservation Easement and the Roaches Ponds Tract Conservation Easement, two areas within the concept plan that total nearly 400,000 acres. NRCM and Forest Ecology Network do not assert that the easements are inadequate, but they do contend that LURC should not have permitted Plum Creek to meet mandatory conservation requirements through its sale, rather than donation, of these conservation easements.

[¶ 50] LURC addressed these concerns explicitly in its decision, concluding that current law does not give it authority to "declare that a landowner does not, *per se,* meet these regulatory standards if, as a way to meet them, the landowner is able to arrange financial assistance from a private third party." The court agreed, concluding that "under the applicable statutory and regulatory structure, there is nothing to prevent Plum Creek from receiving compensation" for the conservation easements.

[¶ 51] The position adopted by LURC and the court accurately reflects the current state of the law regarding this issue.

Section 10.23(H) of LURC's rules, which addresses Resource Plan Protection Subdistricts, requires plans associated with redistricting to satisfy several criteria, including: "The plan, taken as a whole, is at least as protective of the natural environment as the subdistricts which it replaces. In the case of concept plans, this means that any development gained through any waiver of the adjacency criteria is matched by comparable conservation measures." 4 C.M.R. 04–061 010–78 § 10.23(H)(6)(d) (2011). The plan must also strike "a reasonable and publicly beneficial balance between appropriate development and long-term conservation of lake resources." *Id.* § 10.23(H)(6)(f). Nowhere in LURC's rules or statutory authority is there any requirement that these "comparable conservation measures" be donated. Indeed, as the court noted, NRCM's and Forest Ecology Network's arguments regarding this issue are largely based on policy considerations untethered to any administrative, statutory, or common law authority. LURC's conclusion that compensation by a third party is immaterial when considering the adequacy of conservation measures is a reasonable interpretation of its rules.

c. Future Amendment of Concept Plan Subject to Mutual Agreement by LURC and the Landowner

[¶ 52] Forest Ecology Network argues that the concept plan provision that provides for the plan's amendment during its thirty-year term only by mutual agreement between LURC and Plum Creek, or its successor, is a thirty-year exemption from future rezoning and a form of "contract zoning" that is inconsistent with LURC's statutory authority.

[¶ 53] When reviewing an agency's interpretation of a statute, we apply the analysis developed by the United States Supreme Court in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,*

467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). As we discussed in *Cobb v. Board of Counseling Professionals Licensure:* "If the statute is unambiguous, we do not defer to the agency's construction, but we interpret the statute according to its plain language. If the statute is ambiguous, we defer to the agency's interpretation, and we affirm the agency's interpretation unless it is unreasonable." 2006 ME 48, ¶ 13, 896 A.2d 271 (citations omitted) (noting that this standard is the same as the *Chevron* analysis).

[¶ 54] Forest Ecology Network primarily contends that the concept plan conflicts with 12 M.R.S. § 685–A(9), which provides for review of district boundaries and land use standards every five years. This argument relies on an interpretation of LURC's statutory authority that is at odds with the unambiguous language of 12 M.R.S. § 685–A and 12 M.R.S. § 685–C (2011). Section 685–A(8–A)(A) provides that the amendment of a land use district boundary requires substantial evidence that the proposed land use district "is consistent with . . . the comprehensive land use plan," among other requirements. Section 685–C(1) directs LURC to create a comprehensive land use plan.

[¶ 55] LURC's Comprehensive Land Use Plan not only provides for lake concept plans, but also specifically references the "long-range" and "binding" nature of those plans. Comprehensive Land Use Plan app. C, at C–7. The Comprehensive Land Use Plan notes that the goals of concept planning include the encouragement of "long-range planning," "the long-term protection of resources," and "the increased predictability of the development review process." *Id.* at C–8. The Comprehensive Land Use Plan further provides that a "time span for each plan will be established" and that "[t]en years will be the minimum period, but concept plans of

less than twenty years duration will be discouraged if such plans propose significant deviations from existing standards." *Id.* It is thus clear from the plain language of section 685–A(8–A), which incorporates the Comprehensive Land Use Plan by reference, that LURC has the authority to create long-term, binding concept plans, as was done here.

[¶ 56] Forest Ecology Network also contends that the concept plan is in conflict with section 685–A(9) because the concept plan does not permit LURC to unilaterally amend the land use district boundaries if, after the required review, LURC determines that an amendment is necessary. However, turning again to the plain meaning of the statutory language, nothing in section 685–A(9) indicates that LURC must be permitted to unilaterally amend a standard or district after a periodic review. The concept plan permits LURC to amend the plan with Plum Creek's consent, and the plan itself recognizes that it "do[es] not purport to constrain future legislative activity." Reading section 685–A(9) as imposing a per se bar on concept plans with a duration of more than five years is in conflict with both the language and purpose of section 685–A(8–A)(A), as well as the Comprehensive Land Use Plan.

d. Consistency Between the Concept Plan and the Comprehensive Land Use Plan Regarding Prospective Zoning

[¶ 57] Forest Ecology Network asserts that the concept plan is inconsistent with the Comprehensive Land Use Plan because the latter calls for prospective zoning for the Moosehead Lake region, but LURC has not created a special prospective zoning plan for the region and the concept plan cannot serve as a substitute. However, the Comprehensive Land Use Plan merely lists the Moosehead Lake region as a *candidate* for future prospective zoning without requiring that it be prospectively zoned.[12] Comprehensive Land Use Plan at 136. Furthermore, as previously noted, the Comprehensive Land Use Plan specifically provides for lake concept plans, and its description of the purpose of the lake concept plan[13] is similar to its description of the purpose of prospective zoning.[14] Because the Comprehensive

---

12. Under the heading "Applying Prospective Zoning," the Comprehensive Land Use Plan states:

The best candidates for future prospective zoning are probably high-growth, high-value regions identified in the section of the plan on areas with special planning needs. In these regions, prospective zoning could be effectively used to balance growth and economic development needs with protection of their special resource values. The four highest priority areas are:
1. The Rangeley Lakes region
2. The Moosehead Lakes region
3. The Millinocket–Baxter State Park area
4. The Carrabassett Valley area

Me. Land Use Regulation Comm'n, Dep't of Conservation, Comprehensive Land Use Plan 136 (Mar. 27, 1997) [hereinafter Comprehensive Land Use Plan].

13. "The [lake concept] plan is a clarification of long-term landowner intent that indicates, in a general way, the areas where development is to be focused, the relative density of proposed development, and the means by which significant natural and recreational resources are to be protected." Comprehensive Land Use Plan app. C, at C–7.

14. The purpose of prospective zoning is described as follows:

Under prospective zoning, the Commission identifies areas within a community or region that are most appropriate for additional growth based on existing development patterns, natural resource constraints, and future planning considerations. These areas are then zoned as development districts, and future growth is facilitated in these zones. This approach makes the development review process more efficient and pre-

Land Use Plan does not mandate prospective zoning for the Moosehead Lake region, the decision whether to engage in prospective zoning for the region was within LURC's discretion. Given the similarities between the goals of prospective zoning and concept plans, and the extensive public participation in the review of the concept plan, it was not unreasonable for LURC to conclude that the concept plan was consistent with the Comprehensive Land Use Plan. Under these circumstances, LURC did not abuse its discretion by not engaging in prospective zoning. *See Sager*, 2004 ME 40, ¶ 11, 845 A.2d 567.

e. The "Demonstrated Need" Criterion, 12 M.R.S. § 685–A(8–A)(B)

[¶ 58] NRCM challenges LURC's finding that the concept plan, as finally amended, satisfies the "demonstrated need" criterion of section 685–A(8–A)(B), which requires, for the adoption of a land use district boundary, substantial evidence that

[t]he proposed land use district satisfies a demonstrated need in the community or area and has no undue adverse impact on existing uses or resources or a new district designation is more appropriate for the protection and management of existing uses and resources within the affected area.

LURC concluded that the "demonstrated need" criterion of this provision was satisfied, reasoning that because the Moosehead Lake region is designated in the Comprehensive Land Use Plan as an area with special planning needs that cannot be met through "reactive zoning," there is "demonstrated need in the region ... for long-term zoning that ... (i) [is] prospective (i.e. forward-looking); (ii) avoids hap-

dictable, and promotes both economic development opportunities and the protection of principal values.

hazard, incremental development; (iii) [is] based on appropriate locations of development, and (iv) strikes a balance between development and conservation." LURC also determined that the new district designation in Plum Creek's concept plan was more appropriate for the protection and management of existing uses and resources within the affected area and that, therefore, the "more appropriate" requirement of section 685–A(8–A)(B) was met as well.

[¶ 59] NRCM contends that LURC engaged in a tautology by relying on the Comprehensive Land Use Plan's statement of the need for a prospective zoning approach that is responsive to demonstrated need as the basis for finding a demonstrated need for the rezoning realized through the concept plan. LURC responds that it reasonably interpreted the statute by considering the demonstrated need criterion relative to the concept plan "in its entirety as opposed to its various details viewed in isolation." Further, LURC asserts that because "demonstrated need" is only one of two alternative criteria in section 685–A(8–A)(B), and its decision concluded that the concept plan met both criteria, the issue of whether the plan met the "demonstrated need" criterion is moot.

[¶ 60] When it considered this issue in the Rule 80C appeal, the court was not convinced that LURC properly analyzed the "no adverse impact" portion of the demonstrated need criterion of section 685–A(8–A)(B) because the court determined that LURC "did not consider the impact on the entire Moosehead region." However, the court ultimately concluded that this did not amount to error because the record amply supports LURC's conclusion that the concept plan satisfied the

Comprehensive Land Use Plan at 136.

"second prong" of section 685–A(8–A)(B)'s criteria, which requires that the plan is "more appropriate for the protection and management of existing uses and resources within the affected area." 12 M.R.S. § 685–A(8–A)(B).

[¶ 61] The court and LURC's construction of section 685–A(8–A)(B) as providing two ways in which it may be satisfied is consistent with the plain meaning of that section's language.[15] The use of the word "or" establishes two alternative criteria. LURC concluded that both criteria were satisfied by the concept plan, and NRCM challenges LURC's findings regarding only one of the two. Thus, the issue of whether LURC correctly decided the "demonstrated need" criterion is moot because there will be no practical consequences flowing from our decision. *See Anthem Health Plans of Me., Inc. v. Superintendent of Ins.*, 2011 ME 48, ¶ 5, 18 A.3d 824 (stating that when we evaluate an issue for mootness, we examine "whether there remain sufficient practical effects flowing from the resolution of [the] litigation to justify the application of limited judicial resources" (quotation marks omitted)).

f. Denial of Motion to Develop Additional Evidence Regarding Possible Bias of Certain Witnesses

[¶ 62] NRCM contends that the court abused its discretion when it denied its motion, pursuant to M.R. Civ. P. 80C(e), to develop additional evidence of undisclosed bias among certain intervenors. NRCM contends that it did not become aware of *"the depth* of Plum Creek's financial association with other intervenors" until after the filing of the Rule 80C appeal. We review the court's ruling

for an abuse of discretion. *Hale–Rice v. Me. State Ret. Sys.*, 1997 ME 64, ¶ 16, 691 A.2d 1232.

[¶ 63] The Maine Administrative Procedure Act permits a reviewing court to order the taking of additional evidence in certain situations:

The reviewing court may order the taking of additional evidence before the agency if it finds that additional evidence ... is necessary to deciding the petition for review; or if application is made to the reviewing court for leave to present additional evidence, and it is shown that the additional evidence is material to the issues presented in the review, and could not have been presented or was erroneously disallowed in proceedings before the agency.

5 M.R.S. § 11006(1)(B) (2011). In its motion, Forest Ecology Network requested the opportunity to develop additional evidence about payments Plum Creek made to supporters that allowed the supporters to intervene in the proceedings and consequently prejudiced Forest Ecology Network by "stack[ing] the deck" with intervenors friendly to Plum Creek. NRCM joined in Forest Ecology Network's motion, asserting that "[i]f there were party-intervenors in this case whose participation in the proceedings were made possible by virtue of Plum Creek's financing those entities, and paying for their witnesses' time, the record must reflect that financial support."

[¶ 64] In its decision, the court correctly noted that these issues were raised during the proceedings before LURC, and LURC was aware of the allegiances at issue. Parties on both sides of the issue raised concerns about funding several

---

**15.** Neither NRCM nor Forest Ecology Network directly challenges this construction of the statute.

times during the administrative proceedings. Most importantly, Forest Ecology Network and NRCM did not assert that LURC denied them the opportunity to pursue this issue as part of the administrative process. As such, Rule 80C(e) does not afford them a fresh opportunity to present evidence on this issue. As we have stated:

> Rule 80C(e) applies when evidence that is not part of the record, and could not have been made a part of the record by the propounding party, is relevant to a determination before the court. It is not available to present evidence that the applicant should have presented to the agency....

*York Hosp. v. Dep't of Human Servs.*, 2005 ME 41, ¶ 20, 869 A.2d 729.

[¶ 65] The court did not abuse its discretion in denying the motion to develop additional evidence.

The entry is:

The judgment's determination that Land Use Regulation Commission disregarded its procedural rules and engaged in an unauthorized, ad hoc procedure is vacated. The judgment is affirmed in all other respects. Remanded to the Business and Consumer Docket for entry of judgment affirming the September 23, 2009 decision of the Land Use Regulation Commission.