2014 ME 85

**PIKE INDUSTRIES, INC.**

v.

**CITY OF WESTBROOK et al.**

**Docket No. BCD–13–300.**

Supreme Judicial Court of Maine.

Argued: April 8, 2014.

Decided: June 26, 2014.

David P. Silk, Esq. (orally), and Benjamin M. Leoni, Esq., Curtis Thaxter LLC, Portland, for appellant Smiling Hill Farm, Inc.

Sigmund D. Schutz, Esq. (orally), and Jonathan G. Mermin, Esq., Preti Flaherty, LLP, Portland, for appellee Pike Industries, Inc.

Natalie L. Burns, Esq. (orally), Jensen, Baird, Gardner & Henry, Portland, for appellee City of Westbrook, Westbrook Zoning Board of Appeals and Richard Gouzie.

William L. Plouffe, Esq., Drummond Woodsum, Portland, for appellee IDEXX Laboratories, Inc.

Panel: SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, and JABAR, JJ.

MEAD, J.

[¶ 1] The parties are again before us to address issues arising from a consent decree and zoning ordinance amendments that relate to Pike Industries' operation of a quarry in the City of Westbrook. *See Pike Indus., Inc. v. City of Westbrook* (*Pike I*), 2012 ME 78, 45 A.3d 707. This

appeal was taken by Smiling Hill Farm, Inc., from the Superior Court's entry of an amended consent decree (Decree) in the Business and Consumer Docket (*Humphrey, C.J.*) that represents the efforts of the parties to reach an agreement following our decision in *Pike I*. Smiling Hill argues that the Decree results in a transfer of enforcement power from the City to Pike, and that it creates an illegal contract zone. Because we conclude that, in addition to conforming to the requirements laid out in *Pike I,* the Decree does not result in a forfeiture of the City's enforcement power or an illegal contract zone, we affirm the judgment.

## I. BACKGROUND

[¶ 2] Pike owns and operates a quarry on Spring Street in Westbrook that it purchased in 2005. Artel, Inc., IDEXX Laboratories, Inc., and Smiling Hill own property and operate businesses near Pike's quarry. In 2008, the Westbrook Code Enforcement Officer (CEO) began to review Pike's quarrying operations after IDEXX submitted a letter to the CEO asserting that Pike does not have a right to operate a quarry on the Spring Street property. The CEO's zoning review was followed by an appeal to the Westbrook Zoning Board of Appeals (ZBA), a M.R. Civ. P. 80B appeal from the ZBA decision, an initial consent decree entered by the Superior Court that we rejected in *Pike I,* and, ultimately, the second consent decree that is the subject of this appeal.

### A. Municipal Proceedings

[¶ 3] In response to the letter submitted by IDEXX, the Westbrook CEO requested and received a reply from Pike. Pike's reply asserted that, based on the prior use of the land by its predecessor-in-interest, it had a vested right to operate a quarry, a rock-crushing plant, a concrete plant, and an asphalt plant on the property.

[¶ 4] The CEO issued an opinion letter in January of 2009 finding that Pike had grandfathered rights to operate an existing quarry on the property, but that it did not have grandfathered rights to operate a rock-crushing plant, a concrete plant, or an asphalt plant on that site. Pike and IDEXX both appealed the CEO's decision to the Westbrook ZBA. The ZBA reversed the CEO's decision and concluded that Pike did not have a grandfathered right to quarry or conduct other forms of mineral extraction on the property. The ZBA declined to address other equitable claims asserted by Pike. Around the same time, the City attempted to rezone the property and revoke Pike's blasting permits, and took other steps to end Pike's quarrying operations.

### B. The 80B Appeal

[¶ 5] In response to the City's actions and the ZBA decision, Pike filed a complaint in the Superior Court seeking review of the ZBA decision pursuant to M.R. Civ. P. 80B. Pike also asserted claims for equitable relief and sought to enjoin the City from enforcing its zoning ordinances. The court bifurcated the case to address the ZBA's decision and Pike's equitable claims separately. IDEXX, Artel, and Smiling Hill all intervened.

### C. The First Consent Decree

[¶ 6] In 2010, the Business and Consumer Docket affirmed the ZBA's decision. In an attempt to settle the remaining claims, the City, Pike, and IDEXX agreed to enter into a consent decree that allowed Pike to continue its quarrying operations and established a set of governing performance standards. After this first decree was approved by the court, Artel and Smiling Hill appealed, arguing, among oth-

er things, that the consent decree was unenforceable because the City did not have the statutory authority to settle the litigation with a consent decree that exempts the property from a zoning ordinance.

### D. *Pike I*

[¶ 7]  In *Pike I,* we affirmed the trial court's approval of the consent decree in part and vacated it in part, ultimately remanding the case for further proceedings. *See Pike I,* 2012 ME 78, ¶ 15, 45 A.3d 707. We confirmed that the City had the authority to settle the litigation through a consent decree. *Id.* ¶ 19.  We vacated the consent decree in part, however, because it adopted performance standards that were not approved through a statutory contract zoning process or by amendment to the land use ordinance. *Id.* ¶¶ 15, 37.  On remand, we instructed the parties to through a consent decree. *Id.* ¶ 19.  We vacated the consent decree in formalize the performance standards through one of those two processes. *Id.* ¶¶ 15, 38.

### E.  The Second Consent Decree

[¶ 8]  After the case was remanded, the City amended its land use ordinance in an attempt to comply with the requirements we established in *Pike I* and endeavored to enter into a second consent decree with Pike and IDEXX.  The Superior Court declined to approve the second consent decree on two different occasions.

[¶ 9]  In December 2012, the court, in denying Pike's first motion to approve the second consent decree, addressed twelve discrepancies between the decree and the amended zoning ordinance.  It dismissed many of the discrepancies as harmless, but found that others were in conflict with *Pike I.* Specifically, the court found that a number of provisions in the second proposed consent decree would allow the City

to enforce what were in effect land use ordinances that had not been subjected to the statutorily-mandated enactment process.  It also concluded that a provision in the decree stating that the decree would control in the event of a conflict with a relevant land use ordinance was likely illegal.

[¶ 10]  In March 2013, after amending the proposed consent decree to address the court's concerns, the settling parties again sought approval of a proposed consent decree.  The court again denied the motion for approval, recognizing that although the parties had addressed its previous concerns, an enforcement provision within the decree was still in conflict with *Pike I.* Both the objecting parties, Artel and Smiling Hill, and the settling parties moved for reconsideration.  The court denied both motions.

[¶ 11]  The settling parties further amended the proposed second consent decree, and filed a third motion for approval of it.  On May 20, 2013, the court, after determining that all of its concerns regarding conflicts between the amended zoning ordinance and the decree had been satisfied, granted the motion.  Only Smiling Hill appeals.

## II.  DISCUSSION

[¶ 12]  Municipalities have the general authority to resolve land use litigation by consent decree.  *Pike I,* 2012 ME 78, ¶ 32, 45 A.3d 707.  This authority, however, is limited and a consent decree cannot be used to adopt land use regulations that are not otherwise authorized by law. *Id.* ¶¶ 35–38.  Zoning must be accomplished through legitimate use of police powers.  *Whiting v. Seavey,* 159 Me. 61, 68, 188 A.2d 276, 280 (1963).

[¶ 13]  In *Pike I,* we explicitly approved the City's authority to recognize

Pike's grandfathered rights by consent decree: "[T]he trial court did not err by ... concluding that the City had the authority to settle the land use litigation through a consent decree that declares Pike's property to be grandfathered under the City's zoning ordinance...." 2012 ME 78, ¶ 15, 45 A.3d 707. But we also discussed the limits of that authority, and ultimately rejected the proposed consent decree because the performance standards contained in the decree had not been independently approved or enacted by either an amendment to the City's land use ordinance or through the statutorily prescribed contract-zoning process, and were therefore not authorized by law. *Id.* ¶ 37.

[¶ 14] On remand, by agreement of the parties, the City incorporated all of the performance standards contained in the Decree into amendments to the City's land use ordinance. *See* Westbrook, Me., Zoning Ordinance § 311.5 (March 3, 2014). In spite of this process, Smiling Hill appeals again, arguing this time that the Decree results (A) in an impermissible forfeiture of the City's enforcement powers, and (B) in a de facto contract zone—that is, contract zoning that does not comply with the requirements of 30-A M.R.S. § 4352(8) (2013) (setting forth the procedural requirements for contract zoning).

## A. Whether the Decree Results in a Forfeiture of the City's Enforcement Powers

[¶ 15] In its brief, Smiling Hill asks, "What would happen if Pike ceased using its property for quarrying for at least 12 months and the City amended its zoning regulations to prohibit, for example, blasting or rock crushing related to mineral extraction at Pike's property?" This question encapsulates the central issue in this appeal, namely whether the City has given up some of its enforcement powers as a result of the Decree. Smiling Hill argues that the answer is that the Decree would prevent the City from enforcing its amended ordinance. But this answer, and Smiling Hill's assumption that the Decree grants Pike rights beyond those that it would be entitled to if it prevailed at trial, are incorrect. If, in the future, the City were to rezone the area that encompasses Pike's quarry, or amend any land use ordinance so that it conflicts with the Decree, the following would result: (1) Pike would not be able to use paragraphs 9, 56, 58 or 60, or any other provision of the Decree, to prevent the City from enforcing the new zoning ordinance; and (2) the property would be subject to the terms of Westbrook, Me., Land Use Ordinance § 203.2 (March 3, 2014), in the same manner as any other grandfathered use.[1]

### 1. Pike's Right of Enforcement Under the Consent Decree

[¶ 16] The Decree does not provide Pike with a shield, defense, or any other mechanism that would prevent the City from enacting or enforcing a land use ordinance that prohibits quarrying operations in the zoning district that includes Pike's property, nor does it protect Pike from the valid exercise of the City's other police powers. As the Decree states, its purpose and effect is merely to recognize Pike's grandfathered rights "to the same extent as if the [c]ourt had entered a final judgment after trial in favor of Pike"; a

---

1. Westbrook, Me., Land Use Ordinance § 203.2 (Dec. 8, 2008) provides that, "If the nonconforming use of land, building or structure is voluntarily discontinued for 12 consecutive months, as determined by the Code Enforcement Officer, it may thereafter be used or developed only as a permitted use or special exception, in accordance with the performance standards in the zoning district in which it is located."

purpose that we expressly authorized in *Pike I*, 2012 ME 78, ¶ 19, 45 A.3d 707.

[¶ 17] Although Smiling Hill argues that four paragraphs (4, 56, 58, and 60) result in an impermissible transfer of the City's enforcement powers, only paragraph 60 warrants discussion.[2] Paragraph 60 was the subject of much controversy in the trial court, and the court denied a motion for approval of the proposed consent decree because the initial version of paragraph 60 gave the City too much enforcement power—it allowed the City to enforce the performance standards in the proposed decree through the court, rather than enforcing the parallel standards contained in Westbrook, Me., Land Use Ordinance § 311.5 (March 3, 2014) by way of 30–A M.R.S. § 4452 (2013). In refusing to approve the initial version of paragraph 60, the Superior Court correctly determined that it directly conflicted with *Pike I* because it allowed the City to enforce land use performance standards outside of its authority pursuant to section 4452. In order to comply with the court's directive, and with *Pike I*, the settling parties amended paragraph 60 to limit the City's enforcement powers to those defined in section 4452. The relevant portion of paragraph 60 now reads:

> [T]he City shall not enforce any of the performance and use standards established by Section 311 of the City's Land Use Ordinances, as may be amended, *under the terms of this order, and further, that nothing in this Order allows or shall be construed to authorize the City to enforce any performance and use standard contained herein.* The City shall only enforce its Land Use

Ordinances *pursuant to* 30–A M.R.S. § 4452.

(Emphasis added). This language clearly does not eliminate the City's enforcement powers or transfer them to Pike; instead, it merely requires that the City follow the statutorily prescribed process for enforcing land use performance standards as required by *Pike I*, and prevents the City from using the court as an additional enforcement tool.

[¶ 18] The only rights that Pike can enforce as a result of the Decree are the grandfathered rights that it could have acquired had it prevailed at trial. Smiling Hill's concerns that Pike could attempt to use the Decree as a "shield" against enforcement in the future cannot materialize because the Decree does not and cannot provide the means for Pike to do so.

[¶ 19] Smiling Hill's reference to the reserved powers doctrine is, likewise, misplaced. In order for the reserved powers doctrine to apply, as Smiling Hill admits, a municipality must bargain away some essential power. *See U.S. Trust Co. of New York v. New Jersey*, 431 U.S. 1, 23, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977). Because we find that the Decree does not lead to such a result, the doctrine is not relevant here.

## 2. Application of Westbrook, Me., Land Use Ordinance § 203.2

■■ [¶ 20] Section 203.2 of the Westbrook land use ordinance provides that a nonconforming use loses its grandfathered status if the use "is voluntarily discontinued for 12 consecutive months." Nothing in the Decree indicates, as Smiling Hill argues, that section 203.2 would not apply to Pike's quarrying operations, or that the

---

**2.** Paragraphs 9, 56, and 58 do not relate to the City's enforcement powers—paragraph 9 merely announces the intent of the parties to settle the litigation, paragraph 56 makes the agreement binding on heirs and assigns, and 58 provides Pike or IDEXX, but not the City, with procedures for enforcing the terms of the Decree.

Decree overrides section 203.2. The Decree merely recognizes the nonconforming, grandfathered rights that Pike could have been awarded if this case had gone to trial and Pike had prevailed. Section 311.5, on the other hand, legitimizes those rights through the zoning ordinance amendment process. Smiling Hill argues that this process creates a windfall for Pike because Pike's quarrying operations are now considered a fully *conforming* use and Pike can use the Decree to prevent the City from enforcing any land use ordinance that conflicts with the Decree at any time in the future.[3]

[¶ 21] Smiling Hill is correct that, because Westbrook amended its ordinance, Pike's quarrying operations are now a conforming use under section 311.5—not simply a grandfathered use. This arrangement, however, does not allow Pike to avoid enforcement indefinitely. The City may amend its current land use ordinance in the future and rezone the area that encompasses Pike's quarry operations. If the City were to do so, the quarrying and related uses currently permitted by section 311.5 would, like any other nonconforming use, become grandfathered, nonconforming uses that are subject to section 203.2. The Decree would not protect Pike from section 203.2. The Decree is merely a declaration of Pike's rights at a certain point in time and it does not, as Smiling Hill argues, allow those rights to continue in a manner that violates the City's land use ordinance—now, or at any point in the future.

## B. Contract Zoning

[¶ 22] Smiling Hill challenges as illegal contract zoning (1) the Decree and the zoning amendment process generally, and (2) a number of specific provisions in the Decree that were not adopted in the amendment to section 311.5.

### 1. The Decree and Amendment Process

[¶ 23] In order to comply with the requirement that land use regulations be authorized through a valid legal process, in *Pike I* we instructed the parties to approve the Decree's performance and use standards through either amendments to the zoning ordinance or through statutory contract zoning. 2012 ME 78, ¶ 38, 45 A.3d 707 (referencing 30–A M.R.S. § 4342(8) (authorizing contract zoning) and Westbrook, Me., Zoning Ordinance § 106.2 (March 3, 2014) (discussing the process for amendments to the City's land use ordinance)). These two processes—legitimate contract zoning and amending a zoning ordinance—can have similar results, but simply because the outcome of one process resembles the other does not mean approval through both is required. *See Place v. Hack*, 34 Misc.2d 777, 230 N.Y.S.2d 583, 586 (N.Y.Sup.Ct.1962) ("An ordinance is not to be labeled 'spot zoning' merely because it singles out and affects one parcel of land.").

[¶ 24] Here, the settling parties followed our explicit instructions, complied with the lawful process for enacting zoning amendments, and engaged in a transparent and public proceeding. That the ordinance, as amended, does not change the permitted use standards for the entire zoning district where Pike's quarrying operations are located does not, as Smiling Hill argues, result in an illegal contract zone.

---

**3.** Additionally, Smiling Hill contends that the City will be barred from enforcing environmental regulations at the quarry, including regulations related to pollution that still exists at the quarry from a prior owner, Unitrode. The Decree, however, specifically addresses the environmental hazards at the Unitrode site in paragraph 24.

### 2. Specific Provisions in the Decree

[¶ 25] In order to be considered a form of contract zoning, a municipality's actions with regard to an individual property must be inconsistent with its statutory authority to regulate similarly zoned properties. *Cf. Forest Ecology Network v. Land Use Regulation Comm'n*, 2012 ME 36, ¶¶ 52–56, 39 A.3d 74 (concluding that an agency's actions were not inconsistent with its statutory authority to regulate and were therefore not a form of contract zoning).

[¶ 26] The provisions that Smiling Hill singles out—paragraphs 16 and 17 of the Decree—do not relate to the property on Spring Street where Pike seeks to engage in quarrying operations; rather, these provisions apply to another property owned by Pike that is located on the other side of Spring Street from the quarry. The provisions ensure that the grandfathered uses permitted on the quarry property—quarrying, rock crushing, concrete mixing, asphalt mixing—do not occur on Pike's other property. Section 311.5 of Westbrook's ordinance also makes this distinction clear. Therefore, these provisions (paragraphs 16 and 17) do not conflict, but instead comport, with the relevant zoning ordinance, and they do not create an illegal contract zone.

The entry is:

Judgment affirmed.