MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2020 ME 26
Docket:      Ken-19-130
Argued:      December 4, 2019
Decided:     February 27, 2020

Panel:      SAUFLEY, C.J., and MEAD, GORMAN, JABAR, and HUMPHREY, JJ.*
Majority:   SAUFLEY, C.J., and MEAD, GORMAN, and HUMPHREY, JJ.
Dissent:    JABAR, J.

ANGLEZ BEHAVIORAL HEALTH SERVICES

v.

DEPARTMENT OF HEALTH AND HUMAN SERVICES

GORMAN, J.

[¶1]  The Department of Health and Human Services appeals from a judgment of the Superior Court (Kennebec County, *Murphy, J.*) vacating a Department hearing officer's decision requiring AngleZ Behavioral Health Services to repay $392,603.31 in MaineCare reimbursements because of billing errors.  The Department contends that the Superior Court erred by finding that it did not submit "proper evidence" in support of certain of its recoupment claims.  We agree, and vacate the Superior Court's judgment.

---

*  Although Justice Alexander participated in the appeal, he retired before this opinion was certified.

## I. BACKGROUND

[¶2]  To implement the MaineCare program, the Department contracts with health care providers, who bill the Department for MaineCare-covered services pursuant to the terms of those contracts, Department regulations, and federal law.  22 M.R.S. § 3173 (2018); *see* 42 U.S.C.S. § 1396a (LEXIS through Pub. L. No. 116-91); 10-144 C.M.R. ch. 101, ch. I, § 1 (effective Dec. 28, 2012).[1] The Department's regulations authorize it to examine the propriety of payments to providers by auditing randomly selected claims paid to particular providers within a defined payment period and, if the audit reveals billing errors or overpayment, to seek recoupment from the provider in an amount determined by extrapolating the error rate within the audited claims to the entirety of claims paid to the provider in the payment period.  10-144 C.M.R. ch. 101, ch. I, §§ 1.18(C), 1.19-1 to -2(G).

[¶3] In September of 2013, at the behest of the United States Department of Health and Human Services' Office of Inspector General, the Department audited the claims submitted by AngleZ between February 13, 2013, and July 20, 2013, which totaled $613,929.18.   To conduct the audit, the

---

[1] Chapter 10-144 C.M.R. ch. 101, ch. I, § 1, has since been amended, though not in any way relevant to this appeal.  *See* 10-144 C.M.R. ch. 101, ch. I, § 1 (effective Sept. 17, 2018).

Department reviewed 100 randomly selected claims. The Department calculated an error rate in those claims of 80.25%[2] and issued a Notice of Violation applying that error rate to all of AngleZ's claims during that time period, and seeking a total recoupment of $492,684.09.

[¶4] AngleZ requested an informal review of the Notice of Violation, submitted additional documentation for certain claims, and challenged several of the Department's assertions. *See* 10-144 C.M.R. ch. 101, ch. I, § 1.21-1. After conducting the informal review, the Department revised its asserted error rate to 70.20% and, accordingly, reduced the recoupment amount it sought to $430,979.95. In response, AngleZ requested an administrative hearing pursuant to 10-144 C.M.R. ch. 101, ch. I, § 1.21-1(A).

[¶5] At the hearing, which was held over two days in June and October of 2016, two of the Department's employees testified. They described the Department's audit process and extrapolation methodology and explained why the Department was seeking 100%, 20%, or no recoupment for any given claim in the random sample depending on the type of flaw, if any, in the claim. The

---

[2] Although the Department audited exactly 100 claims, the error rate is fractional because the Department is authorized to, and did in this case, seek less than 100% recoupment for any given claim. *See* 10-144 C.M.R. ch. 101, ch. I, § 1.19-2(G) (effective Dec. 28, 2012). For example, if the Department audits 100 claims, identifies errors in fifty, and seeks 100% recoupment in only twenty-seven of those fifty and 20% recoupment in the remaining twenty-three, the total error rate will be 31.6%, not 50%.

4

Department also introduced, without objection, a spreadsheet describing each claim in the random sample.

[¶6] In addition to the spreadsheet, the Department provided detailed records relating to a representative subset of claims in the random sample. AngleZ also submitted documents pertaining to some of the claims; in total, the parties submitted detailed records regarding thirty-four of the claims in the random sample. In response to documentation that AngleZ submitted at the hearing, the Department agreed to reduce or withdraw its recoupment requests on several claims, bringing the error rate to 63.95% and the recoupment amount to $392,603.31.[3]

[¶7] On February 16, 2017, the hearing officer entered a recommended decision in favor of the Department, rejecting AngleZ's arguments and concluding that "the Department was correct" in seeking $392,603.31 in recoupment based on "assessments not being completed in a timely manner, invalid treatment plans, documentation not supporting the hours billed, and other documentation errors." The Department's Acting Commissioner adopted the recommendation in June of 2017, and AngleZ filed a timely petition for

---

[3] The parties agree that the recoupment should be further reduced to $373,704.05 based on the Department's agreement at the hearing as to two lines not reflected in its final spreadsheet.

review of that decision in the Superior Court.[4] *See* 5 M.R.S. § 11002(3) (2018); M.R. Civ. P. 80C.

[¶8] Once the case was before the Superior Court, AngleZ filed a motion to take additional evidence and, as an alternative, urged the court to vacate the hearing officer's decision as arbitrary, capricious, or unsupported by the evidence. *See* 5 M.R.S. § 11007(4)(C)(5)-(6) (2018); M.R. Civ. P. 80C(e). The court denied AngleZ's request to take additional evidence on the grounds that it had passed up the opportunity to "present evidence and ask the Hearing Officer to review more cases during the hearing." In its ultimate decision, however, the court agreed with AngleZ that the hearing officer's decision was "not supported by substantial evidence" because the Department had not submitted the records underlying its assertions relating to thirty-two of the claims and, on March 21, 2019, issued an order vacating the Commissioner's decision and remanding the matter to the Department.

[¶9] The Department timely appealed.[5] *See* M.R. App. P. 2B(c)(1).

---

[4] AngleZ appears to have retained counsel in this matter after the hearing officer issued a recommended decision. It was represented by employees at the administrative hearing.

[5] Generally, "[a]ppeals from trial court orders remanding a matter to [an] administrative agency for further action are interlocutory." Alexander, *Maine Appellate Practice* § 303(e) at 289 (5th ed. 2018). In this case, however, it is not entirely clear what would happen on remand. To the extent that the Superior Court was remanding the matter to the hearing officer simply for recalculation of the recoupment amount—rather than for the submission and consideration of additional evidence on the thirty-two claims—then this appeal is not interlocutory, because the Superior Court fully

6

## II. DISCUSSION

[¶10]   In the Superior Court, AngleZ argued that the hearing officer's decision should be vacated on two grounds: first, that the decision was not supported by substantial evidence, and second, that the decision was arbitrary or capricious.  The Superior Court agreed with AngleZ regarding the former but did not address the latter.  Because we review the hearing officer's decision directly and both issues have been fully briefed, however, we take up each in turn. *See Forest Ecology Network v. Land Use Regulation Comm'n*, 2012 ME 36, ¶ 28, 39 A.3d 74.

A.   Substantial Evidence

[¶11]   AngleZ argues that the hearing officer's decision was not supported by substantial evidence because neither AngleZ nor the Department

---

disposed of the matter and left no further questions for the agency to resolve. *See Bryant v. Town of Camden*, 2016 ME 27, ¶ 12, 132 A.3d 1183.

If, on the other hand, on remand the Department were allowed to submit the additional documentation the Superior Court held necessary, the sufficiency of the Department's summary evidence would escape our review.  Moreover, as a practical matter the Department would henceforth be obligated to submit full documentation for every claim at risk of appeal.  That result would substantially burden the Department's ability to efficiently conduct administrative hearings, but the issue would never reach this Court.  Thus, because the interlocutory judgment has "the potential of interfering severely with the administrative procedures of that agency," *Forest Ecology Network v. Land Use Regulation Comm'n*, 2012 ME 36, ¶ 20, 39 A.3d 74 (quotation marks omitted), we review the Superior Court's decision on the merits.

submitted any underlying documentation regarding thirty-two of the sixty-six claims on which the hearing officer awarded the Department recoupment.

[¶12] "In an appeal from a judgment issued pursuant to M.R. Civ. P. 80C, we review the administrative agency's decision directly for legal errors, abuse of discretion, or unsupported factual findings." *Forest Ecology Network*, 2012 ME 36, ¶ 28, 39 A.3d 74 (quotation marks omitted). In conducting such a review, we do not substitute our judgment for that of the agency and will "affirm findings of fact if they are supported by substantial evidence in the record." *Int'l Paper Co. v. Bd. of Envtl. Prot.*, 1999 ME 135, ¶ 29, 737 A.2d 1047. This standard of review "does not involve any weighing of the merits of evidence"; instead, we will vacate an agency's factual findings "only if there is no competent evidence in the record to support" the findings. *Friends of Lincoln Lakes v. Bd. of Envtl. Prot.*, 2010 ME 18, ¶ 14, 989 A.2d 1128.

[¶13] Before proceeding to the narrower issue, we first reject any suggestion that the Department's summary spreadsheet does not constitute "evidence" upon which the hearing officer could rely. Pursuant to the Department's regulations and the Maine Administrative Procedure Act, evidence will be admitted at administrative hearings "if it is the kind of evidence upon which reasonable persons are accustomed to rely in the conduct

of serious affairs." 5 M.R.S. § 9057(2) (2018); 10-144 C.M.R. ch. 1, § VII(A)(1) (effective Jan. 23, 2006). AngleZ does not contend that the spreadsheet does not satisfy this evidentiary standard—it did not even object to the spreadsheet's admission at the hearing—and there is no indication that the spreadsheet is unreliable. We therefore conclude that the spreadsheet is "evidence in the record." *Int'l Paper Co.*, 1999 ME 135, ¶ 29, 737 A.2d 1047.

[¶14] The Superior Court appears to have determined otherwise because it interpreted the spreadsheet as a "decision" that the hearing officer was charged with reviewing in some sort of appellate capacity. The issue seems to have been clouded by the Department's and the hearing officer's use of the terms "decision" and "findings"—which, to lawyers and judges, connote the judgment of and facts found by a court in a traditional judicial setting. But the spreadsheet is not the result of an adjudication; rather, it is a set of assertions that the Department made based on its investigation. *See* 5 M.R.S. § 8002(1) (2018) (defining "adjudicatory proceeding" as "any proceeding before an agency in which the legal rights, duties or privileges of specific persons are required by . . . statute to be determined after an opportunity for hearing"); 22 M.R.S. § 42(7)(A) (2018) (providing that no hearing is required at the informal review stage of a MaineCare provider audit); 10-144 C.M.R. ch. 101,

ch. I, § 1.21-1.  The spreadsheet was the functional equivalent, in other words, of a Department employee's testimony regarding the factual and legal bases for seeking recoupment for each claim in the random sample, and it constituted "evidence" that the hearing officer could use to determine the validity of those bases.

[¶15]  Having determined that the Department's spreadsheet is evidence, the next question is whether, in view of the entire record before the hearing officer, the spreadsheet is "substantial" evidence supporting the hearing officer's judgment—that is, whether the spreadsheet presented sufficient information for the hearing officer to "determine anew the relevant facts and apply the law to those facts" with regard to the thirty-two recoupment claims for which the underlying documentation was not submitted.[6]  10-144 C.M.R. ch. 1, § VII(C)(1) (effective Jan. 23, 2006); *see Int'l Paper Co.*, 1999 ME 135, ¶ 29, 737 A.2d 1047.  For several reasons, we conclude that it does.

[¶16]  First, the spreadsheet itself contains a full, albeit succinct, statement of the grounds for each individual recoupment demand.  The spreadsheet provides the following information relating to each claim in the

---

[6]  The Department does not contend that there is any evidence other than the spreadsheet that might support the hearing officer's conclusion regarding those thirty-two claims.

100-claim sample: the date on which AngleZ had provided the service; the service code and description; the amount the Department had paid AngleZ; the documentation AngleZ had originally submitted, including the time noted for each service; and, most importantly, the Department's notes, from each stage of its investigation, regarding the propriety of each claim. These notes are laden with acronyms and shorthand, and vary in their degree of detail about the bases for determining a particular claim's validity, but they are not conclusory. The notes accompanying recoupment demands based on inadequate documentation are among the briefest, and state, for example: "communicated with member after her therapy appointment about another apartment she could look at; planned to meet next week . . . duration missing; 20% penalty." Other notes are far more detailed.

[¶17] But we need not decide whether the spreadsheet would be sufficient on its own to support the hearing officer's decision, because in the context of the entire hearing the spreadsheet provided the hearing officer with enough information for an individual assessment of each claim. The hearing was aimed at resolving categorical issues, that is, at assessing the Department's legal assertions regarding the application of MaineCare regulations to the services for which AngleZ claimed entitlement to reimbursement. To take one

example, the Department asserted that AngleZ was not entitled to payment for time its workers spent accompanying MaineCare members to appointments with other MaineCare providers. To assess the validity of the Department's recoupment demands for this category of claim, the hearing officer received the underlying documentation and heard testimony about representative claims presenting that issue. It was reasonable for the hearing officer to apply legal and analytical conclusions he derived from that more intensive inquiry to the other claims in the same category. In the context of the entire record, therefore, the spreadsheet was substantial evidence to support the hearing officer's decision. *See Int'l Paper Co.*, 1999 ME 135, ¶ 29, 737 A.2d 1047.

[¶18] The Department's regulations regarding the evidentiary burden and standard of proof applicable at the administrative hearing do not alter this result. Pursuant to 10-144 C.M.R. ch. 1, § VII(C)(1), the hearing officer must "determine anew the relevant facts and apply the law to those facts." The regulations also provide that "no presumptions are to be made for or against the Department concerning the validity of the factual or legal basis for the action or inaction which is the subject matter of the hearing." *Id.*

[¶19] These regulations might prevent recoupment if the spreadsheet had provided only, for example, the date and amount of each claim, without any

12

statements of fact bearing on the claims' legal validity; merely conclusory claims of entitlement to recoupment could not allow the hearing officer to "determine anew the relevant facts." *Id.* As we have just described, however, the spreadsheet contained sufficient information to allow such a review. That the hearing officer credited the statements in the spreadsheet, just as he might have credited a Department employee's identical testimony, is not for us to question. *See N. Atl. Sec., LLC v. Office of Sec.*, 2014 ME 67, ¶ 45, 92 A.3d 335.

[¶20] Furthermore, nothing in the record or in the hearing officer's decision indicates that the hearing officer erroneously applied a presumption in favor of the Department. The hearing officer understood the applicable burden and standard of proof, and appears to have conducted a thorough and independent analysis of the issues AngleZ raised.

[¶21] Because the hearing officer's decision was supported by substantial evidence as to all claims in the random sample, we vacate the Superior Court's judgment on that issue.

B. Arbitrary or Capricious

[¶22] We next address AngleZ's contention—which it pressed in the Superior Court and maintains here—that the hearing officer's conclusion that the Department's revised recoupment demand was "reasonably representative

of the claims universe" was arbitrary or capricious. *See* 5 M.R.S. § 11007(4)(C)(6) (2018). Essentially, AngleZ argues that the hearing officer acted arbitrarily or capriciously by not revising the overall error rate to reflect the revisions[7] the Department made during and after the hearing.

[¶23] Our "arbitrary or capricious" standard is high, and we will "not find that an administrative agency has acted arbitrarily or capriciously unless its action is 'wilful and unreasoning' and 'without consideration of facts or circumstances.'" *Kroeger v. Dep't of Envtl. Prot.*, 2005 ME 50, ¶ 8, 870 A.2d 566 (quoting *Cent. Me. Power Co. v. Waterville Urban Renewal Auth.*, 281 A.2d 233, 242 (Me. 1971)). When reviewing an administrative adjudication, furthermore, we assess whether the adjudicator's decision was arbitrary or capricious based on the record before it. *See Forbes v. Town of Southwest Harbor*, 2001 ME 9, ¶ 14, 763 A.2d 1183.

[¶24] Here, before the hearing, AngleZ expressly agreed to limit the scope of detailed review to a representative subset of claims, and represented to the hearing officer that it would "be prepared to offer all 66 cases in detail" if necessary. It did so because, as it expressly acknowledged, the very premise

---

[7] Contrary to AngleZ's suggestions, the Department's agreement to reduce its recoupment demands was not a concession of "error" in its factual or legal assertions, but rather an acknowledgment of the additional documents that AngleZ had presented at the hearing.

of the hearing was that the parties disputed AngleZ's entitlement to reimbursement for certain *categories* of claims—such as whether and when AngleZ could bill for time that its employees spent transporting MaineCare members—the resolution of which did not require a line-by-line analysis of every claim in the random sample.

[¶25]  At the hearing, the Department presented its employees' testimony and the spreadsheet in order to prove its case. AngleZ submitted additional documentation for some specific cases, and those documents did cause the Department to reduce several recoupment demands.[8]  If AngleZ thought that it was in possession of more evidence that would rebut the Department's assertions regarding any of the remaining thirty-two claims, it could have presented that evidence at the hearing or argued that point in its closing statement or, as the hearing officer himself suggested, presented such evidence at a later, continued hearing.

[¶26]  In his decision, the hearing officer carefully analyzed the evidence presented and explained his ruling.  Given that the spreadsheet and the testimony from Department employees was prima facie evidence supporting

---

[8]  Before the hearing, AngleZ had already had at least two opportunities to submit to the Department documents that, according to AngleZ, might support its entitlement to reimbursement: (1) when AngleZ originally submitted those claims in 2013, and (2) after the Department issued the Notice of Violation.

the Department's recoupment claims, the hearing officer's reliance on that evidence and his conclusion that the Department's revised sample was "reasonably representative of the claims universe" was neither arbitrary nor capricious. *See Kroeger*, 2005 ME 50, ¶ 8, 870 A.2d 566.

The entry is:

> Judgment vacated. Remanded to the Superior Court with instructions to remand to the Department for correction of the total recoupment amount as discussed in paragraph 6, note 3.

---

JABAR, J., dissenting.

[¶27] I respectfully dissent because I believe that it was error for the hearing officer to rely upon the Department's spreadsheet when the hearing officer's task, pursuant to the Department's own rules, was to consider the evidence de novo.

[¶28] Ordinarily, administrative agencies are given broad discretion to admit evidence at hearings "if it is the kind of evidence upon which reasonable persons are accustomed to rely in the conduct of serious affairs." 5 M.R.S. § 9057(2) (2018); 10-144 C.M.R. ch. 1, § VII(A)(1) (effective Jan. 23, 2006). This reasonable person "evidentiary standard is not high," Alexander,

*Maine Appellate Practice* § 458(d) at 409 (5th ed. 2018), and it is significantly more inclusive than the Maine Rules of Evidence, *see In re Jonas*, 2019 ME 25, ¶ 1, 202 A.3d 1187. Indeed, if we were just analyzing the Department's spreadsheet pursuant to the reasonable person standard, I might agree that it was admissible competent evidence upon which the hearing officer could rely.

[¶29] However, the Department's own rules—which are somewhat unusual—contain additional limitations that preclude such a conclusion. First, the rules direct that the hearing officer must determine the facts pertaining to the Department's recoupment action "anew." 10-144 C.M.R. ch. 1, § VII(C)(1) (effective Jan. 23, 2006). Anew means "[o]ver again; once more; afresh" and "always implies some previous act or activity of the same kind." *See Anew*, Black's Law Dictionary (11th ed. 2019). The word is synonymous with the phrase de novo, *see H & H Oil Co. v. Dineen*, 557 A.2d 604, 605 (Me. 1989) (de novo means "anew"), and we have previously explained that a hearing conducted de novo "means a new presentation of facts for consideration by a tribunal *independent of any prior decision*," *Stewart v. Town of Sedgwick*, 2000 ME 157, ¶ 7 n.2, 757 A.2d 773 (emphasis added).

[¶30] Far from being independent of its prior decision, the Department's spreadsheet was integral to and inextricable from its earlier Final Informal

Review Decision. Not only was the spreadsheet attached to the Final Informal Review Decision, it contained—by the Department's own description—only summaries of its findings for each claim, not the totality of the evidence that formed the basis for that decision. The Department's argument that the hearing officer's decision affirming its findings was supported by competent evidence because those findings were in the record is both circular and contrary to the de novo nature of the hearing. An obvious implication of requiring the hearing officer to determine the facts "anew"—over again; afresh—is that the hearing officer cannot simply rely on the Department's previous findings.

[¶31] Second, the Department's rules dictate that "*no presumptions are to be made for or against the Department concerning the validity of the factual or legal basis for the action . . .* which is the subject matter of the hearing." 10-144 C.M.R. ch. 1, § VII(C)(1) (emphasis added). This aspect of the rules would be rendered meaningless if, as the Department suggests, it could simply rest on its prior findings at the administrative hearing and essentially shift the burden to the provider to disprove its findings. *See Presumption*, Black's Law Dictionary (11th ed. 2019) ("*A presumption shifts the burden of production or persuasion to the opposing party*, who can then attempt to overcome the presumption." (emphasis added)). It seems especially dubious to shift the

burden to the provider to disprove the Department's findings in cases like this where the Department is already using a small sample of claims to calculate an error rate that is then applied to the whole universe of claims paid during the period at issue.

[¶32] Similarly, because the Department had the burden of proof, the fact that AngleZ did not request that the Department provide the underlying records for each claim did not somehow eliminate the Department's burden. Nor did AngleZ waive any objection to the use of the spreadsheet as competent evidence merely because it did not object to the admission of the Final Informal Review Decision to which the spreadsheet was attached. Being that the administrative hearing was the result of AngleZ's appeal from the Final Informal Review Decision, it only makes sense that that decision was made part of the record at the hearing.

[¶33] Regarding the administrative burden of reviewing the records, I do not suggest that the Department should not be able to use appropriate summary evidence, just that the decision at issue at the administrative hearing is not competent summary evidence. Moreover, in this particular case, the Department acknowledged to the Superior Court that the "universe of identified errors" in the contested claims was "small enough to have allowed

for a review of each claim individually." It is also worth noting that the Department's rules allow for the parties to stipulate to undisputed facts to save time and define the scope of the hearing. *See* 10-144 C.M.R. ch. 1, § VII(A)(8) (effective Jan. 23, 2006).

[¶34] For these reasons, I would hold that the Superior Court was correct when it found that because the Department did not submit competent evidence supporting the existence of an appropriate basis for recoupment for thirty-two of the contested claims, the hearing officer's decision to affirm the Department's recoupment decision for those claims was not supported by substantial evidence. Because AngleZ does not contest the Department's recoupment decisions on the thirty-four claims for which evidence was admitted, we should remand to the Department to recalculate its recoupment decision to reflect only those remaining claims.

Aaron M. Frey, Attorney General, and Thomas C. Bradley, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for Appellant Department of Health and Human Services

Jay P. McCloskey, Esq. (orally), and Alfred C. Frawley IV, Esq., McCloskey, Mina, Cunniff & Frawley, LLC, Portland, for appellee AngleZ Behavioral Health Services