MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:        2024 ME 5
Docket:          Ken-24-24
Submitted on
  Memoranda: January 24, 2024
Decided:         January 24, 2024

Panel:          STANFILL, C.J., and MEAD, JABAR, HORTON, CONNORS, and DOUGLAS, JJ., and
                HUMPHREY, A.R.J.

## DONALD J. TRUMP

v.

## SECRETARY OF STATE et al.

PER CURIAM

[¶1]  "With the exception of opinions issued on solemn occasions under article VI, Section 3, of the Constitution, the judiciary in this state is not empowered to render advisory opinions."  *Bar Harbor Banking & Tr. Co. v. Alexander*, 411 A.2d 74, 76 (Me. 1980).  Consistent with our judicial role, and to avoid issuing advisory opinions, we adhere to a final judgment rule that requires a trial court's decision to be final before we consider an appeal.  *See id.*; *State v. Me. State Emps. Ass'n*, 482 A.2d 461, 463, 465 (Me. 1984).  "The reasons for the final judgment rule are many and strong.  It helps curtail interruption, delay, duplication and harassment; it minimizes interference with the trial process; it serves the goal of judicial economy; and it saves the

appellate court from deciding issues which may ultimately be mooted, thus not only leaving a crisper, more comprehensible record for review in the end but also in many cases avoiding an appeal altogether." *Me. State Emps. Ass'n*, 482 A.2d at 464.

[¶2]   Here, the Secretary of State and three challengers to Donald J. Trump's primary petition—Kimberley Rosen, Thomas Saviello, and Ethan Strimling—appeal from an interlocutory order of the Superior Court (Kennebec County, *Murphy, J.*) remanding to the Secretary of State the matter in which the Secretary of State decided that the petition submitted by former President of the United States Donald J. Trump as a candidate for the Maine Republican Party's presidential primary was invalid because of a false declaration of qualification on his candidate consent form.  Because the appeal is not from a final judgment, we dismiss the appeal as interlocutory and not justiciable.

## I.  BACKGROUND

[¶3]  By the filing deadline of December 1, 2023, Donald J. Trump filed a petition for his candidacy for President of the United States and submitted a required notarized candidate consent form for the Republican Party's presidential primary.  *See* 21-A M.R.S. § 336 (2023), *amended by* P.L. 2023, ch. 304, § A-5 (emergency, effective June 26, 2023) (to be codified at 21-A M.R.S.

§ 336); P.L. 2023, ch. 389, § 2 (effective Oct. 25, 2023) (to be codified at 21-A M.R.S. § 336(3)).  On the form provided, Trump supplied identifying information, stated his voting residence, and included his notarized signature beneath the following language:

### Qualifications of President of the United States (U.S. Constitution, Article II, Section 1)

- Be a natural born U.S. Citizen
- Have been a resident of the United States for at least 14 years
- Be at least 35 years of age

_____

### Candidate's Consent

I hereby declare my intent to be a candidate for the Office of President of the United States and participate in the Presidential Primary for the party named above to be held on March 5, 2024, in the State of Maine.  I further declare that my residence is in the municipality and state listed above; that I am enrolled in the party named on this consent; that I meet the qualifications to hold this office as listed above; and that this declaration is true.

[¶4]  By December 8, 2023—the statutory deadline for raising challenges to the petition—the Secretary of State received three challenges.[1]  *See* 21-A M.R.S. § 336(3); 21-A M.R.S. § 337(2)(A) (2023).  Rosen, Saviello, and Strimling together argued that Trump should be removed from the primary

---

[1]  Because two of the challengers, Mary Anne Royal and Paul Gordon, have not appealed from the Secretary of State's decision on their challenges or from the trial court's order, we do not discuss the issues that they raised in their challenges.

ballot because, having previously taken an oath as President of the United States "to support the Constitution of the United States," Trump "engaged in insurrection or rebellion against the same," which precludes him from holding the office of President under Section 3 of the Fourteenth Amendment. U.S. Const. amend. XIV, § 3.[2] The Secretary of State held a hearing in accordance with 21-A M.R.S. § 337 and the Maine Administrative Procedure Act, 5 M.R.S. §§ 9051-9064 (2023), on December 15, 2023. The Secretary of State was required to determine, after the hearing, whether "any part of the declaration" in the candidate consent form was false, thereby rendering the consent and the primary petition void. 21-A M.R.S. § 336(3) ("If, pursuant to the challenge procedures in section 337, any part of the declaration is found to be false by the Secretary of State, the consent and the primary petition are void.").

[¶5] On December 19, after the hearing and the parties' initial briefing, the Colorado Supreme Court certified an opinion holding that Trump was

---

[2] This section provides:

> No person shall be a Senator or Representative in Congress, or elector of President and Vice President, or hold any office, civil or military, under the United States, or under any State, who, having previously taken an oath, as a member of Congress, or as an officer of the United States, or as a member of any State legislature, or as an executive or judicial officer of any State, to support the Constitution of the United States, shall have engaged in insurrection or rebellion against the same, or given aid or comfort to the enemies thereof. But Congress may by a vote of two-thirds of each House, remove such disability.

U.S. Const. amend. XIV, § 3.

disqualified under Section 3 of the Fourteenth Amendment from appearing on the primary ballot in Colorado. *Anderson v. Griswold*, No. 23SA300, 2023 WL 8770111, --- P.3d --- (Colo. Dec. 19, 2023), *cert. granted sub nom. Trump v. Anderson*, No. 23-719, 2024 WL 61814 (U.S. Jan. 5, 2024). On December 21, 2023, the Secretary of State accepted supplemental briefs from the parties addressing the Colorado decision.

[¶6] In the Secretary of State's decision, issued on December 28, 2023, she concluded that she had the authority to exclude unqualified candidates from the primary ballot and found that Trump was not qualified to appear on the ballot because he had sworn, as President, to support the United States Constitution and had then engaged in insurrection against the United States. *See* U.S. Const. amend. XIV, § 3. She suspended the effect of her decision until the Superior Court ruled on any appeal.

[¶7] Trump timely appealed to the Superior Court by filing a petition for review of final agency action on January 2, 2024, within five days after the Secretary of State issued her decision. *See* 21-A M.R.S. § 337(2)(D); 5 M.R.S. §§ 11001, 11002 (2023); M.R. Civ. P. 80C. Among other proceedings in the Superior Court, Trump moved to stay the court proceedings after the Supreme Court of the United States issued a writ of certiorari on his appeal from

6

*Anderson v. Griswold*, No. 23SA300, 2023 WL 8770111, --- P.3d ---. The Secretary of State and Rosen, Saviello, and Strimling opposed Trump's motion to stay.

[¶8]  After receiving briefs from all parties and several amici, the court entered an order on January 17, 2024.  Among other rulings, the court denied Trump's motion to stay the court proceedings; stayed, by agreement of all parties, the effect of the Secretary of State's ruling pending the outcome of the United States Supreme Court's decision in *Anderson*; and remanded the matter to the Secretary of State with instructions to issue a new ruling "modifying, withdrawing, or confirming" her December 28 decision after the Supreme Court reaches a decision in *Anderson*.  The court reasoned that a remand was necessary because Maine's statutory scheme contemplates the Secretary of State—not the courts—having the initial authority to decide a challenge asserting the falsity of a candidate's oath in a candidate consent form.[3]

[¶9]  The Secretary of State appealed to us by filing a notice of appeal in the Superior Court on January 19, 2024, within the three-day period established by section 337(2)(E).  *See also* M.R. Civ. P. 80C(n); 5 M.R.S. § 11008

---

[3]  *See Bar Harbor Banking & Tr. Co. v. Alexander*, 411 A.2d 74, 77 (Me. 1980) (explaining the "judicial policy of not deciding an issue concerning which an administrative agency has decision capacity until after the agency has considered the issue" (alteration and quotation marks omitted)).

(2023). On that same day, we ordered the Secretary of State and any other appellants to show cause why the appeal should not be dismissed as interlocutory. Rosen, Saviello, and Strimling thereafter filed a timely notice of appeal. On January 23, 2024, we accepted memoranda on the issue. We now dismiss the appeal because we conclude that it is interlocutory and that no statutory or judicially created exception to our rule requiring a final judgment on appeal applies.

## II. DISCUSSION

[¶10] An appeal to the Law Court is generally "not ripe for appellate review unless the appeal is from a final judgment." *Stewart Title Guar. Co. v. State Tax Assessor*, 2006 ME 18, ¶ 3, 892 A.2d 1162. It is well settled that when a matter has been remanded to an agency for further proceedings, the Superior Court decision is not a final judgment because it does not fully decide and dispose of the entire case, "leaving no further questions for . . . future consideration and judgment by the administrative agency." *Est. of Pirozzolo v. Dep't of Marine Res.*, 2017 ME 147, ¶ 5, 167 A.3d 552 (quotation marks omitted); *see also, e.g.*, *Fox Islands Wind Neighbors v. Dep't of Env't Prot.*, 2015 ME 53, ¶ 9, 116 A.3d 940. Rule 80C(m) expressly contemplates that any appeal to us occurs after the remand and that issues generated before a remand to an

agency will be considered if raised in an appeal brought after the entry of a final judgment.[4] *See also Farrell v. State, Dep't of Hum. Servs.*, 415 A.2d 828, 829 (Me. 1980) ("Our dismissal of plaintiff's appeal is solely because it is premature and does not foreclose later review of the whole case to determine whether he has been caused any prejudice by the action of the Superior Court.").

[¶11]   We have, on rare occasions, considered appeals from remand orders "when the remaining action [was] essentially ministerial, such as the formal issuance of a permit," *Est. of Pirozzolo*, 2017 ME 147, ¶ 5, 167 A.3d 552 (quotation marks omitted).  The remand order here, however, directs actions that are more than ministerial.  Where "the issue which the parties seek to present to this court might be affected by the action taken pursuant to the remand order, we will usually refrain from entertaining the appeal."  *Id.* (quotation marks omitted).

[¶12]   Although the order on appeal here is patently interlocutory, the Secretary of State and the challengers to Trump's petition contend that (A) there is statutory authorization for an interlocutory appeal and (B) two

---

[4] "If the court remands the case for further proceedings, all issues raised on the court's review of the agency action shall be preserved in a subsequent appeal taken from a final judgment entered on review of such agency action."  M.R. Civ. P. 80C(m).  The 1997 Advisory Committee's Note to Rule 80C(m) states, "Rule 80C(m) is amended to clarify that an order of remand from the Superior Court to the governmental agency is not a final judgment from which an appeal lies, absent special circumstances."

judicially created exceptions to our final judgment rule apply: (1) the judicial economy exception and (2) the death knell exception. *See Me. State Emps. Ass'n*, 482 A.2d at 464.

## A.     Statutory Authorization for Interlocutory Appeal

[¶13]  The Secretary of State argues that section 337(2)(E) requires us to enter a final opinion on the merits of the matter before us.  The judicial review portions of section 337(2) provide in relevant part as follows:

> **D.** A challenger or a candidate may appeal the decision of the Secretary of State by commencing an action in the Superior Court. This action must be conducted in accordance with the Maine Rules of Civil Procedure, Rule 80C, except as modified by this section. . . . The court shall issue a written decision containing its findings of fact and conclusions of law and setting forth the reasons for its decision within 20 days of the date of the decision of the Secretary of State.
>
> **E.** Any aggrieved party may appeal [to the Law Court] the decision of the Superior Court, on questions of law, by filing a notice of appeal within 3 days of that decision. . . . As soon as the record and briefs have been filed, the court shall immediately consider the case.  The court shall issue its decision within 14 days of the date of the decision of the Superior Court.

In accordance with section 337(2)(D), the Superior Court conducted the action by following Rule 80C of the Maine Rules of Civil Procedure, which provides that "[t]he manner and scope of review of final agency action or the failure or refusal of an agency to act shall be as provided by 5 M.R.S.A. § 11007(2) through

§ 11007(4)." M.R. Civ. P. 80C(c). As authorized by section 11007, the Superior Court decided to "[r]emand the case for further proceedings . . . or take such action as the court deems necessary." 5 M.R.S. § 11007(4)(B) (2023). The Secretary of State then appealed to us, invoking 21-A M.R.S. § 337(2)(E).

[¶14] We have entertained appeals from orders other than final judgments where there is specific statutory authorization for such an appeal from a particular interlocutory order. *Me. Cent. R.R. Co. v. Bangor & Aroostook R.R. Co.*, 395 A.2d 1107, 1113 (Me. 1978). For instance, the Legislature has expressly authorized interlocutory appeals "from [a]n order denying an application to compel arbitration." 14 M.R.S. § 5945(1)(A) (2023); *see Champagne v. Victory Homes, Inc.*, 2006 ME 58, ¶ 7, 897 A.2d 803. We review jeopardy and medical treatment orders in child protection proceedings because the Legislature has specifically authorized those interlocutory appeals even though the orders do not finally resolve a child protection matter: "A party aggrieved by an order of a court entered pursuant to section 4035 . . . or 4071 may appeal directly to the Supreme Judicial Court sitting as the Law Court . . . ." 22 M.R.S. § 4006 (2023); *see* 22 M.R.S. § 4035 (2023) (jeopardy orders); 22 M.R.S. § 4071 (2023) (medical treatment orders); *In re Dakota P.*, 2005 ME

2, ¶ 12, 863 A.2d 280.  By statute, certain decisions in criminal matters may also be appealed immediately even though they are not final judgments:

> An appeal may be taken by the State in criminal cases on questions of law from the District Court and from the Superior Court to the Supreme Judicial Court sitting as the Law Court: From an order of the court prior to trial which suppresses any evidence, including, but not limited to, physical or identification evidence or evidence of a confession or admission; from an order which prevents the prosecution from obtaining evidence; from a pretrial dismissal of an indictment, information or complaint; or from any other order of the court prior to trial which, either under the particular circumstances of the case or generally for the type of order in question, has a reasonable likelihood of causing either serious impairment to or termination of the prosecution.

15 M.R.S. § 2115-A(1) (2023).  In the presence of such an explicit authorization, we honor "a legislative intention to create an exception to the final judgment rule allowing immediate appeal of such interlocutory orders." *Me. Cent. R.R. Co.*, 395 A.2d at 1113.

[¶15]  Here, there is no such explicit authorization.  To the contrary, section 337(2)(D) states that the appeal "must be conducted in accordance with the Maine Rules of Civil Procedure, Rule 80C, except as modified by this section."  Nothing in section 337 modifies the final judgment rule or authorizes any interlocutory appeal.  Moreover, the statute requires the Superior Court to "issue a written decision containing its findings of fact and conclusions of law and setting forth the reasons for its decision."  21-A M.R.S. § 337(2)(D).  By

12

statute, the Superior Court is expressly authorized to enter a decision "[r]emand[ing] the case for further proceedings . . . or tak[ing] such action as the court deems necessary."  5 M.R.S. § 11007(4)(B).

[¶16]  As to the statutory authorization of an appeal from "the decision of the Superior Court" and the direction in the statute that we "issue [a] decision" within fourteen days after the Superior Court's decision, *id.* § 337(2)(E), the Legislature cannot "supplant the power of the courts to determine whether a justiciable controversy has been presented."  *Bryant v. Town of Camden*, 2016 ME 27, ¶ 14 & n. 4, 132 A.3d 1183 (citing Me. Const. art. III, §§ 1, 2 (establishing the separation of powers between the branches of Maine's government and prohibiting any branch from exercising the powers of another branch)).  Our decision to dismiss the appeal as interlocutory within that period may not be the final word in the matter, but it decides the case as it has been presented to us.  Accordingly, we are not persuaded that the statute requires us to disregard the lack of justiciability of the decision challenged on appeal.[5]

---

[5]  We note this is not the first time a matter has been remanded to the Secretary of State upon the Superior Court's judicial review of an election-related decision.  In *Reed v. Sec'y of State*, 2020 ME 57, 232 A.3d 202, the Secretary of State issued a decision declaring a petition for a direct initiative of legislation valid and the proposed legislation eligible for a statewide vote.  *Id.* ¶ 7; *see* 21-A M.R.S. § 905(1) (2018) (since amended in ways not relevant here, most recently by P.L. 2023, ch. 342, § 1 (effective Oct. 25, 2023) (to be codified at 21-A M.R.S. § 905(1))).  On appeal to the Superior Court, the court remanded the matter for the Secretary of State to take additional evidence, after which the

**B.      Judicially Created Exceptions to the Final Judgment Rule**

[¶17]  The next question is whether a judicially created exception to the final judgment rule weighs in favor of immediate appellate review of the Superior Court's interlocutory order.

**1.      Judicial Economy Exception**

[¶18]  The judicial economy exception applies when resolution of the appeal can "establish a final, or practically final, disposition of the entire litigation" and the interests of justice require that an immediate review be undertaken.  *Me. State Emps. Ass'n*, 482 A.2d at 464-65; *see Forest Ecology Network v. Land Use Regul. Comm'n*, 2012 ME 36, ¶ 17, 39 A.3d 74; *see also Maples v. Compass Harbor Vill. Condo. Ass'n*, 2022 ME 26,¶ 17 n.9, 273 A.3d 358 ("We clarify here that the availability of the judicial economy exception does not depend on our deciding the case in a certain way, *cf. U.S. Dep't of Agric., Rural Hous. Serv. v. Carter*, 2002 ME 103, ¶ 13, 799 A.2d 1232, and, with respect to the first requirement, a party need only demonstrate that, in at least one alternative, our ruling on appeal might establish a final, or practically final,

---

Secretary of State issued a final decision, the Superior Court reviewed that decision, and the matter came to us on appeal. *Reed*, 2020 ME 57, ¶¶ 8-11, 232 A.3d 202.  This process enabled us to make a final decision that did not depend on any additional proceedings and decision-making.  *See id.* ¶¶ 12-24.

14

disposition of the entire litigation, *see, e.g., Liberty v. Bennett*, 2012 ME 81, ¶ 19, 46 A.3d 1141; *Cutting v. Down E. Orthopedic Assocs., P.A.*, 2021 ME 1, ¶¶ 16-18, 244 A.3d 226.").

[¶19]  Uncertainties regarding multiple issues of federal law pervade the proceedings pending in Maine and are likely to require additional proceedings to ensure the proper application of the law.  We would run a high risk of issuing an advisory opinion if we decided the matter on the merits before a final judgment has been entered.  Especially when several possible outcomes of the present appeal would not finally resolve the matter,[6] we cannot conclude that our review "has the potential to establish a final disposition of the entire litigation."  *Forest Ecology Network*, 2012 ME 36, ¶ 23, 39 A.3d 74.

[¶20]  The expedited timeline set forth by statute does not persuade us of the need for our immediate review.[7]  If we were to issue a final decision, only then to learn from the Supreme Court that, for instance, Section 3 of the

---

[6] As just two examples, we could vacate the Superior Court's decision and remand the matter for the court to reach a final judgment, or we could affirm the Superior Court's decision, which would result in a remand to the Secretary of State.

[7] If a final determination of disqualification were to be made before the ranked-choice primary on March 5, 2024, the vote could proceed, with the Secretary of State issuing a notice informing voters of the disqualification.  *See* 21-A M.R.S. §§ 1(27-C)(E), 371(5), 441(1), 723-A (2023), *amended by* P.L. 2023, ch. 304, §§ A-14 to A-19, A-39 (emergency, effective June 26, 2023, except as to 21-A M.R.S. § 723-A(5-B), which is effective Jan. 1, 2024) (to be codified at 21-A M.R.S. § 723-A).

Fourteenth Amendment is not self-executing or that all findings regarding insurrection must be reached by a higher standard of proof than the Secretary of State applied,[8] a flurry of court activity would ensue in an effort to reopen the decision of the Secretary of State or seek independent judicial relief, causing delay that the existing interlocutory order might avoid.  This is not an instance in which judicial economy concerns encourage us to undertake immediate review.

[¶21]  Finally, in their discussion of the judicial economy exception, the challengers have also alluded to another potential exception to the final judgment rule without specifically raising it: the separation of powers exception.  This exception applies if the Superior Court has interfered with "apparently legitimate executive department activity" in disruption of the administrative process, in a way that "encourages the circumvention of statutorily authorized investigation and enforcement mechanisms."  *Bar Harbor Banking & Tr. Co.*, 411 A.2d at 75-77 (reviewing a Superior Court's temporary restraining order enjoining a scheduled administrative hearing).  The court here remanded for the Secretary of State to exercise her statutorily

---

[8] In particular, the potential for the Supreme Court's decision to require additional fact-finding by the Secretary of State weighs against our acceptance of an interlocutory appeal.  *See Wilcox v. City of Portland*, 2009 ME 53, ¶¶ 13-14, 970 A.2d 295*.*

authorized function of making a final determination of whether "any part of [Trump's] declaration is . . . false" after the Supreme Court decides *Anderson*. 21-A M.R.S. § 336(3). Far from interfering with "legitimate executive branch activity," the Superior Court order respects the separation of powers and the primary role of the Secretary of State in making the determination at issue.

### 2. Death Knell Exception

[¶22] "The death knell exception permits judicial review when failure to do so would preclude any effective review or would result in irreparable injury." *Me. State Emps. Ass'n*, 482 A.2d at 464 (quotation marks omitted). Thus, we will undertake immediate review when "the appellant would obviously suffer irreparable harm otherwise and the issue pressed on appeal would be effectively mooted if not immediately addressed." *Id.* "The exception is only available when the injury to the plaintiff's claimed right would otherwise be imminent, concrete, and irreparable." *Carter*, 2002 ME 103, ¶ 12, 799 A.2d 1232 (quotation marks omitted); *see also Me. State Emps. Ass'n*, 482 A.2d at 464-65 (declining to review a remand order when it could be challenged after entry of a final judgment).

[¶23] Even when ballot printing deadlines are at issue, we have not always applied the death knell exception. In *Crafts v. Quinn*, 482 A.2d 825 (Me.

1984), we declined to apply the death knell exception in a case where the plaintiffs sought injunctive relief to allow more time to obtain signatures for the Libertarian Party's presidential candidate, even though a final disposition by the Superior Court would not be reached before the election without our acceptance of an immediate appeal. *Id.* at 827-29.

[¶24] In contrast, in *Alliance for Retired Americans v. Secretary of State*, 2020 ME 123, 240 A.3d 45, we applied the death knell exception to review an interlocutory order denying a preliminary injunction enjoining the rejection of certain absentee ballots. *Id.* ¶¶ 1, 5. The plaintiffs sought a declaratory judgment that statutes governing the deadline for absentee ballots and the validation and rejection of absentee ballots were unconstitutional as applied during the COVID-19 pandemic. *Id.* ¶ 1 & n.4. We reviewed the decision immediately because "once the November election [was] held, the claimed injury to [the plaintiff voters'] constitutional right to vote"—which was "specific to th[e] pandemic-affected election cycle—[could not] be repaired, even if they eventually prevail[ed] on their complaint for declaratory judgment after the election." *Id.* ¶ 6.

[¶25] The Secretary of State suggests that there is irreparable harm because a delay in certainty about whether Trump's name should appear on the

primary ballot will result in voter confusion. This uncertainty is, however, precisely what guides our decision *not* to undertake immediate appellate review in this particular case. There are multiple alternative outcomes that would be more effectively addressed through the Superior Court's order of remand to the Secretary of State.

[¶26] We are also struck by the fact that the parties, including the Secretary of State, all agreed that the effect of the Secretary of State's decision should be stayed until *Anderson* is decided. Given that, we cannot conclude that concrete, irreparable harm would flow from our decision not to review this matter immediately. *Carter*, 2002 ME 103, ¶ 12, 799 A.2d 1232. Indeed, there is at least as great a risk of additional process and delay if we consider this appeal and reach an ostensibly final decision, and then the Supreme Court's decision makes additional court or administrative action necessary to comply with the federal law it announces with no clear path for resolution. Given the high level of uncertainty, the Secretary of State has not identified a *concrete* and irreparable harm arising from our decision not to review this matter immediately. *See id.*

### III. CONCLUSION

[¶27]  Our final judgment rule exists for situations such as this, where other decisionmakers' choices are likely to alter the landscape of the case and narrow the scope of our review.  *See Me. State Emps. Ass'n*, 482 A.2d at 464. Requiring a final judgment in this situation serves the interests of justice; enhances administrative and judicial efficiency; averts our issuance of what would likely be, at least in some part, an advisory opinion; and allows for true and effective decision-making when the matter is ripe.  *See Est. of Pirozzolo*, 2017 ME 147, ¶ 5, 167 A.3d 552; *Bar Harbor Banking & Tr. Co.*, 411 A.2d at 76.

The entry is:

Appeal dismissed as interlocutory.

---

Aaron M. Frey, Attorney General, Thomas A. Knowlton, Dep. Atty. Gen., and Jason Anton, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellant Secretary of State

Benjamin Gaines, Esq., Gaines Law, LLC, Brunswick, and James T. Kilbreth, Esq., Drummond Woodsum, Portland, for appellants Kimberley Rosen, Thomas Saviello, and Ethan Strimling

Bruce W. Hepler, Esq., and Benjamin E. Hartwell, Esq., The Law Offices of Bruce W. Hepler, LLC, Portland; Scott E. Gessler, Esq., and Geoffrey N. Blue, Esq., Gessler Blue LLC, Greenwood Village, Colorado; Ronald D. Coleman, Esq., and Gary M. Lawkowski, Esq., Dhillon Law Group, Inc., Newark, New Jersey, and Alexandria, Virginia, for appellee Donald J. Trump